## MASON v. FIRE ASSOCIATION OF PHILADELPHIA.

The findings of a court and jury are presumed to be correct; and, unless there is a clear preponderance of evidence against them, they will not be disturbed on appeal.

Evidence, in an action on a fire insurance policy to recover for loss thereunder, and for vacating an award made by appraisers, held to show that the appraiser appointed by the insurance company was not fair and impartial.

Whil appraisers appointed under the terms of an insurance policy lay not be equired to proceed with the strictness required in a common-law arbic-ation, they are required to act with impartiality, to fix the time for their meeting, and notify the parties, to proceed in a judicial manner, to hear evidence, and investigate the claims of insured, and arrive at a reasonable, just, and fair conclusion, after hearing evidence, as to the rights of the respective parties, and should act without regard to the manner of their appointment.

The board of appraisers appointed under the terms of an insurance policy are a quasi court, and should be disinterested men.

Appraisers of the loss on insured property were appointed, by the terms of the agreement for submission, to estimate "the sound value and loss" upon the property damaged and destroyed. In their award they stated that they had carefully examined the premises and remains of the property "in accordance with the foregoing appointment, and have determined the loss and damage" to be an amount specified. Held, that the award was not in accordance with the submission, as the "sound value" of property is "the cash value, making an allowance for depreciation due to use, etc., at and immediately preceding the time of the fire."

(Opinion filed, June 26, 1909.)

Appeal from Circuit Court, Union County.  Hon. JOSEPH W. JONES, Judge.

Action by A. O. Mason against the Fire Association of Philadelphia.  Judgment for plaintiff, and defendant appeals.  Affirmed.

M. H. Boutelle, N. H. Chase, and N. M. Wallace, for appellant.  Ericson & Stickney and French & Orvis, for respondent.

CORSON, J.  This action was instituted by the plaintiff to recover the sum of $3,000 upon an insurance policy issued to him by the defendant upon the stock of grain and flour and other milling products contained in a flouring mill at Beresford, S. D., and to vacate and set aside an award made by appraisers, awarding to the plaintiff the sum of $638 for his damage and loss in the mill building proper, and also a supplemental award, awarding to the plaintiff $1,000 for damage and loss to property in the building annexed to the said flouring mill.  Findings and judgment being in favor of the plaintiff for the sum of $3,000, and vacating and setting aside said awards, and denying a motion for a new trial, the defendant has appealed therefrom.

The complaint is in the usual form, with a copy of the policy annexed thereto, for the recovery of the amount claimed to be due

under the same.   The plaintiff then proceeds at length to state
the ground for vacating and setting aside the award, and the sup-
plemental award made by the appraisers therein.   The defendant
in his answer, among other defenses, pleaded the àward of the ap-
praisers as conclusive in determining the amount of loss and dam-
àge to which the plaintiff was entitled, and also set up as a de-
fense that the destruction of the property by fire was caused by
the fraudulent acts of the plaintiff.   The case was tried to the
court, and a jury called by it to assist it in determining certain is-
sues presented by the pleadings; and, as the court's findings found
substantially the facts as alleged in the complaint, the material
parts of these findings upon the two issues are given as more satis-
factory than the statement of the allegations contained in the com-
plaint.

The questions submitted to the jury, and their answers there-
to, are not contained in the abstract, but the court, in connection
with its first findings, recites and finds that: "The court submit-
ted to a jury certain questions with reference to the value of grain
and grain products in plaintiff's mill and addition thereto, at the
time of its destruction by fire, and with reference to whether the
plaintiff set, or caused to be set, said fire; and the jury having
answered said questions, the court adopts as a part of its findings,
the findings of the jury, and finds therefrom, and from the evidence
adduced in the action, the following facts:  (1) That, in accord-
ance with the findings of the jury, there was, at the time of the
destruction of the plaintiff's mill property by fire, in the main part
of plaintiff's mill building, grain and grain products of the value
of $3,470.06, and in the flourroom addition to said main building
there was at said time grain products of the value of $2,333.70.
That said fire was not set, or caused to be set, by the plaintiff, A.
O. Mason."

The court, after proceeding to find the usual facts in connec-
tion with the loss of the plaintiff, in its seventh finding finds as
follows: "That on March 31, 1906, there being a disagreement
between plaintiff and defendant as to the amount of sound value
and loss upon plaintiff's property covered by said policy of insur-

ance, the plaintiff and defendant (defendant acting through its adjuster, John B. Lee, Jr.) entered into a written agreement, whereby it was agreed that A. N. Hadley, of Indianapolis, Ind., who was appointed by said Lee on behalf of defendant, and L. N. Crill, of Elk Point, S. D., who was appointed by plaintiff, should appraise and estimate the sound value and loss upon the property covered by said policy of insurance, and damage to said property destroyed by said fire."

The court, by findings 9, 10, 11, 14, 15, 16, and 17, finds as follows: "That, thereafter and on the 25th day of July, 1906, said Hadley and said Crill selected and appointed S. E. Brookman, of Vermillion, S. D., as umpire, to act with them in appraising the sound value and loss or damage of said property, in cases of difference between said Hadley and Crill. (10) That at the time of the appointment of said Hadley, as an appraiser, on behalf of defendant, said John B. Lee, Jr., stated and represented to plaintiff that said Hadley would be a competent and disinterested appraiser; that he was an old millman, and was fair and impartial; that plaintiff relied upon and believed said representations, and in consequence thereof made no objection to the appointment of said Hadley as defendant's appraiser. (11). That said Hadley was in fact a machinist, and a man who for many years had been employed by different insurance companies as arbitrator and appraiser in determining losses under policies issued by said companies; that said Hadley for 'years had more of such business than he cared to do, and was not a fair or impartial appraiser, at the time of his appointment, or at the time he acted as an appraiser in this action." "(14) That on July 27, 1906, said Hadley, Crill, and Brookman were at Sioux City, Iowa, for the purpose of estimating and determining the amount of sound value and loss upon the property of plaintiff damaged and destroyed by said fire. That plaintiff was also at Sioux City at said time, and had with him a book containing monthly invoices of grain and grain products taken on or about the first day of each month, from the month of May to the month of December, 1905, inclusive, and also had a list containing the names of many persons residing at Beresford, who plaintiff claimed knew about the quantity of grain and grain prod-

ucts which were in said mill, and addition thereto, at the time of said fire, and would testify with reference thereto, and stated to said Hadley that he was there to give evidence as to the quantity and value of said property. (15) That said Hadley refused to receive any evidence from plaintiff bearing upon the amount of sound value or loss of plaintiff's said property. * * * (16) That one of said awards signed by said Hadley and Brookman stated that they had carefully examined the premises and remains of the property described in said policy of insurance (being the policy sued on in this action), and had determined plaintiff's loss and damage to be $638, but said award fails to state what the sound value of said property of plaintiff described in said policy of insurance was at the time of, and immediately preceding, said, fire, or at any time. That an additional or supplemental award, signed by said Hadley and said Brookman, states: 'We, the undersigned, appraisers of the value and damage caused by fire to mill property of A. O. Mason, Beresford, S. D., find a number of items which are not mentioned in the different policy forms attached to the several appraisement agreements, in accordance to which we were sworn to appraise. Our appraisement of their value and damages are as follows: * * * On stock in stockhouse—$1,000.00.' (By 'stock in stockhouse' was meant flour and mill products in the flour-room addition to main portion of mill.) (17) That said Hadley and Brookman did not have before them, or receive any sworn evidence with reference to, the sound value or loss of grain and grain products destroyed by said fire, except an affidavit signed and sworn to by the plaintiff and one Phipps, which fixed the value of said property at a little more than $6,000.".

From its findings the court concludes as follows: "(1) That the flour-room addition to the main part of said mill building was a part of said mill, and the contents thereof were covered by defendant's policy of insurance. (2) That the awards signed by A. N. Hadley and S. E. Brookman were not, and are not, binding upon plaintiff. (3) That plaintiff is entitled to judgment against defendant for $3,000, with interest thereon at 7 per cent. per annum from the 12th day of February, 1906, and for his costs in this action."

It is contended·by the appellant: First, that the findings of the jury and court that the destruction of the property was not caused by the plaintiff is not supported by, and is contrary to, the evidence in the case; second, that the evidence tending to impeach the awards was insufficient, and that the awards should have been held conclusive as to the amount of loss and damage sustained by the plaintiff. It is insisted by the respondent, in support of the findings of the jury and the court, that there was not only no preponderance of evidence in favor of the appellant upon the issue as to the cause of the fire, but that there was a clear preponderance of the evidence in favor of the respondent and his claim that the fire was ·accidental and without his fault. And it is further insisted by the respondent that the evidence tending to prove that Hadley, the appraiser appointed by the appellant, was biased and prejudiced in favor of the appellant is clearly sustained by the evidence, as was also the fact that the plaintiff was deprived of an opportunity to present to the appraisers his evidence as to the value of the property contained in the mill and annex at the time of the fire, and that the awards were made without a proper examination by them of plaintiff's evidence. We are inclined to agree with the respondent in the propositions asserted by him. Presumptively the findings of the court and jury are correct; and, unless there is a clear preponderance of the evidence against such findings, they will not be disturbed by this court. The evidence in this case as to the cause of the fire is quite voluminous, and no useful purpose would be served by its reproductions in this opinion. But after a careful examination of the same we are of the opinion that the court and jury were fully justified in finding that the fire was accidental, and was not, in any manner, caused by the acts of the respondent. The findings of the court also that Hadley, the appraiser appointed by the appellant, was not a fair and impartial appraiser, at the time of his appointment, or at the time he acted as an appraiser in the action, seems to be fully sustained by the evidence.

S. P. Grey, a witness on the part of the plaintiff, whose deposition was taken at Indianapolis, Ind., testified that he was manager of the Indianapolis Machinery Exchange; that he knew A.

N. Hadley; that he knew Hadley was employed by different insurance companies to act as appraiser and arbitrator of insurance losses by fire; that he first knew of his acting in that capacity in 1898, and that he last knew him as acting in that capacity about one year ago; that he had a talk with him, and that he knew that he was acting for several insurance companies. On his cross-examination he stated that Hadley had told him that acting as insurance appraiser was a great part of his business. On his re-examination he testified that Hadley told him he had acted in a great many instances for insurance companies. He also testified that said Hadley said "he had more of that kind of business to do than he cared to have," and that in his conversation with him Hadley talked over a great many cases in which, he stated, he had acted for insurance companies at different places. The conduct of Hadley as an appraiser in this case clearly shows that he was biased and prejudiced against the respondent, as he refused to allow the respondent to introduce any evidence as to the amount of his loss, or to hear any statement from the plaintiff himself as to such loss.

Plaintiff and respondent testified: "I was never called upon to give any evidence before the board of appraisers, consisting of Mr. Hadley, Mr. Crill, and Mr. Brookman. I asked the privilege of submitting evidence before this board at Sioux City, when the appraisal was being made there at the West Hotel in that city. * * * I went into the West Hotel with this invoice book, which I gave to Mr. Crill, and told him to hand it to Mr. Hadley, which he did, and called his attention to it. Mr. Hadley said he did not care anything about that, and Mr. Crill called for me, and I took the book out. At the time I went up there, Mr. Hadley came to the door, and looked out, and then shut the door in my face and went back. I think Mr. Hadley asked me if Mr. Crill and I did not want to consult together, and I said, 'No.' He stepped out, and Crill and I talked about 10 minutes, and then Mr. Hadley came back. * * * Hadley further said: 'I am not here for the purpose of appraising with you. Mr. Crill and I are doing this.' I said: 'I am here to give any evidence as to the stock in the mill, and I am prepared; but, if you will not hear it, I beg your par-

don, and I will get out'—and I did get out right then and there."

It also appears from the testimony of Mr. Crill that the board of appraisers as such never had the plaintiff before it, and that Mr. Hadley seemed quite angry at the plaintiff's request to be heard by himself and his witness before the appraisers. No one we think can read the testimony in this case as to the statements and conduct of Mr. Hadley without arriving at the conclusion that he was a biased and prejudiced appraiser, and that the representations made to the plaintiff by Mr. Lee, the general agent of the company, were not an entirely truthful statement as to the fairness and impartiality of Mr. Hadley. The proceedings of the appraisers Hadley and Brookman in not notifying the plaintiff of the time and place for a hearing, and in refusing to hear him and his witnesses, were certainly very extraordinary, and are such as cannot be sanctioned by this court. While appraisers appointed under the terms of an insurance policy may not be required to proceed with that strictness required in common-law arbitration, they are still required to act with impartiality, and to hear evidence and investigate the claims of the plaintiff, and to arrive at a reasonable, just, and fair conclusion, after hearing such evidence as to the rights of the respective parties. It is true that in the articles of submission to the appraisers in this case it was not stipulated that notice should be given, or a hearing had, but clearly justice requires that appraisers so appointed shall fix the time for their meeting, of which the parties, respectively, should be notified, and that they should hear and consider such evidence as should be introduced by the respective parties on such a hearing. The award of the appraisers in this case, including both the $638 in the first award and the $1,000 in the supplemental award, was less than one-third of the amount found to be the loss of the plaintiff by the jury and the court on the trial. Clearly such a gross discrepancy can only be accounted for on the theory that Hadley and Brookman failed to accept and consider the evidence tendered to them by the plaintiff, and which they refused to receive.

The board of appraisers, including the umpire, constitutes a quasi court, governed by rules applicable to common-law arbitrators, and should constitute a body of disinterested men, whose bus-

iness it is to proceed in a judicial and impartial manner to ascertain the facts in controversy, without regard to the manner in which the duty has been devolved upon them. Such appraisers are bound, in the execution of their trust, to look to the true merits of the matter submitted to their judgment. The appraisers and umpire are alike the agents of both parties, and not of one party alone, and are bound to exercise a high degree of judicial impartiality. Under our standard policy, the appointment of appraisers being compulsory, it is highly important that the men selected should in every sense be disinterested, and that the parties who are thus compelled to submit the question as to the amount of the loss or damage to such appraisers should have an opportunity to be fully heard before them, and to submit such proofs as may be necessary to support their respective claims. While possibly the appraisers may not be bound to adhere to the strict rules required by a court, they should nevertheless be required to give the parties a reasonable and fair opportunity to submit the evidence that may be deemed necessary by them in support of their respective claims affecting the amount of the loss and damage.

In 3 Cyc. 748, under the head of "Irregularities in Proceedings," the learned author on Arbitration and Award says: "While arbitrators are not bound by the strict and technical rules of law, they must nevertheless have a due regard to natural justice and the rights of the parties; and irregularities in their proceedings, whereby these things are arbitrarily disregarded, constitute such misconduct as will necessitate the setting aside of the award. For example, an award may be set aside because the arbitrators proceeded without notifying a party or giving him an opportunity to be heard; refused to postpone the hearing when it was plainly their duty to do so; refused to hear competent and material evidence; received evidence in the absence of, and without the consent of, a party; refused to allow one of the arbitrators to take part in their deliberations; improperly delegated their authority; or chose an umpire by lot." Jackson v. Roane, 90 Ga. 669, 16 S. E. 650; Shively v. Knoblock, 8 Ind. App. 433, 35 N. E. 1028; Hills v. Home Ins. Co., 129 Mass. 345; Produce Refrigerator Co. v. Norwich Union Fire Ins. Soc., 91 Minn. 210, 97 N. W. 875, 98

N. W. 100; Royal Ins. Co. v. Parlin & Orendorff Co., 12 Tex. Civ. App. 572, 34 S. W. 401; Glover v. Rochester German Ins. Co., 11 Wash. 143, 39 Pac. 380; Bradshaw v. Agriculture Ins. Co., 137 N. Y. 138, 32 N. E. 1055; Redner v. N. Y. Fire Ins. Co., 92 Minn. 306, 99 N. W. 886; Christianson v. Norwich Union Fire Ins. Co., 84 Minn. 526, 88 N. W. 16.

In Richards on Insurance Law (3d Ed.) 421, that learned author stated the rule, under the head of "Appraisers, Competent, Disinterested," as follows: "The appraisers and umpire must be competent and disinterested. 'Disinterested' does not refer simply to an absence of pecuniary interest. A disinterested appraiser is one who is free from bias or prejudice towards either party. While theoretically the appraisers, it is said, are supposed to act in a quasi judicial capacity, and wholly without partisanship, both in their selection of umpire, and in the conduct of the appraisal, nevertheless in practice each appraiser is apt to be a zealous advo-cate before the umpire to the end that the interests of the party appointing him may be advanced, and not overlooked; and, within limits, such an attitude seems to be recognized by the courts as legitimate and indeed unavoidable. He is, however, a judicial officer, rather than an agent, and is under obligations to be fair and disinterested. The appointment of a biased or unsuitable ap-praiser, coupled with concealment of his character, is ground for vacating the award. But if, with knowledge of his objectionable disposition or lack of competency, a party proceeds with the ap-praisal, such conduct amounts to a waiver, and the award will be binding upon both parties." Hall v. Western Assur. Co., 133 Ala. 637, 32 South. 257; Ins. Co. v. Hegewald, 161 Ind. 631, 66 N. E. 902; Kiernan v. Dutchess County Mut. Ins. Co., 150 N. Y. 190, 44 N. E. 698; Canfield v. Watertown Fire Ins. Co., 55 Wis. 419, 13 N. W. 252; Kaiser v. Hamburg-Bremen Fire Ins. Co., 59 App. Div. 525, 69 N. Y. Supp. 344, and Id., 172 N. Y. 664, 65 N. E. 1118; Continental Ins. Co. v. Garrett, 125 Fed. 589, 60 C. C. A. 395. In Kaiser v. Hamburg-Bremen Fire Ins. Co., supra, the award of the appraisers was that the plaintiff was entitled to $3,031, and, in a suit by the insured to have the award set aside, where the referee found the damages amounted to $3,930.28, and that the

evidence showed that the loss was in excess. of the latter sum, it was held that the award was so much below the loss as to sustain a decision setting the award aside; it appearing that the contention as to the appraiser was well taken.

It further appears, by an examination of·the·agreement for the submission to the appraisers, that they were appointed to appraise and estimate "the sound value and loss" upon the property damaged and destroyed by the fire, and that the term "sound value and loss" is repeated some three times in the submission. In the award, however, the appraisers find as follows: "To the parties in interest: We have carefully examined the premises and remains of the property hereinbefore specified in accordance with the foregoing appointment, and have determined the loss and damage to be $638. Witness our hands at Sioux City this 28th day of July, 1906. A. N. Hadley, S. E. Brookman, Appraisers." It will thus be seen that no statement is made therein that they had appraised the "sound value" of the. property. Sound value of the property is defined to be "the cash value, making an·allowance for depreciation due to use, .etc., at and immediately preceding the time of the fire." Continental Ins. Co. v. Garrett, supra. This definition is plainly implied by·the paragraphs contained in the submission. In the case at bar the court finds that the award is not in accordance with the submission, because the "sound value" has not been estimated or appraised. In the case last above referred to it was held that this failure to find "the sound value" of the property was a fatal defect in the award. And that learned court further held that failure to give notice to the parties of the time and place of the appraisal, so as to permit the introduction of evidence, rendered the award void. The trial court was clearly right, therefore, in holding the award void, and vacating and setting aside the same.

The findings and judgment of the circuit court being fully sustained by the evidence, its judgment and order denying a new trial are affirmed.