4 So.2d 806

BRANCH v. SPRINGFIELD FIRE & MARINE INS. CO. OF SPRINGFIELD, MASS.

No. 34232.

Nov. 3, 1941.

Theus, Grisham, Davis & Leigh, of Monroe, and St. Clair Adams & Son, of New Orleans, for appellant.

Harry Fuller, of Winnfield, for appellee.

McCALEB, Justice.

This is a suit on a tornado insurance policy in which the insured seeks recovery for the loss he has suffered as a consequence of a windstorm which damaged his property. The facts, which gave rise to the litigation, are as follows: The plaintiff, Mack L. Branch, is the owner of a certain two-story brick building situated in Winnfield, Louisiana. On March 4, 1935, this building sustained substantial damage as the result of a windstorm or

tornado. The property was insured against loss or damage by windstorm under a policy issued to the plaintiff by the defendant company. Timely notice of the loss was given to the defendant and, within a few days, it sent its adjuster to Winnfield to make an investigation. The adjuster, a Mr. Prioleau Ellis, in company with a contractor named Jones, examined the insured building, estimated the damage and thereafter offered to pay to the plaintiff the sum of $475 in full settlement of the loss. The plaintiff declined the offer.

On April 26, 1935, plaintiff wrote to the home office of the defendant informing it that he had been unable to adjust his claim with Mr. Ellis and requested that he be furnished with blanks for the purpose of making a proof of loss of the storm damage. On April 30th, the proofs of loss were mailed to the plaintiff by the adjuster, Mr. Ellis, and, in the accompanying letter, he informed plaintiff that, since a disagreement existed between the plaintiff and the company respecting the amount of the loss, the company demanded that an appraisal of the damage be made in accordance with the terms of the policy. He requested that the plaintiff advise the defendant of the name of the appraiser he would select so that the appraisal could be made and the matter settled. On May 4, 1935, the plaintiff informed Mr. Ellis by letter that he was willing to submit his claim to arbitration and that he had selected a Mr. W. O. Averett as the appraiser to represent him. After receiving this letter, the company appointed one L. A. Ellis as its appraiser and subsequently on May 8, 1935, the appraisal agreement was reduced to writing. This agreement provided that the respective appraisers appointed by the parties would select an umpire who would act with them in settling the loss in case they differed in their appraisal. In conformity therewith, a Mr. S. W. Tudor was chosen as umpire.

On June 12, 1935, the appraisers made an examination of the damage to plaintiff's building and, being unable to agree as to the amount of the loss, called in Mr. Tudor, the umpire, to settle their differences. After viewing the premises, Mr. Tudor estimated that the loss amounted to $675. Mr. L. A. Ellis, the company's appraiser, concurred in this estimate and he and Mr. Tudor made an award to plaintiff of that sum. Mr. Averett, the appraiser for the plaintiff, declined to sign the award and plaintiff refused to accept it in settlement of his claim. This suit followed.

In the petition he filed in the district court, plaintiff alleged that, as a result of the windstorm, he had suffered a loss amounting to the full sum of $2,942.75, which represented the damage sustained by his building, stock of merchandise, and other damage resulting from rains which occurred after the windstorm but while the building was in a damaged condition.

The defendant company resisted liability to the plaintiff in any sum beyond $675, the amount of the award of the appraisers. Affirmatively pleading that the finding of the appraisers was conclusive of its liability in the premises, it deposited the amount of $675 in the registry of the

court and prayed to be hence dismissed with costs.

Soon after the filing of the defendant's answer and its deposit of the amount of the award in the registry of the court, the plaintiff appeared and set forth that the award was void and unenforcible for the following reasons: (1) that it was not signed by all of the appraisers; (2) that it was for damages caused by fire and not for loss and damage caused by windstorm; (3) that the sound value of the property was not fixed or determined by the appraisers as required by the policy and by the agreement to submit the matter to appraisal; (4) that the appraiser selected by the defendant was not disinterested; (5) that the umpire was suggested by the defendant's appraiser and that he likewise was not a disinterested party; (6) that plaintiff was not accorded the right to be present at the time the appraisement was made; and (7) that the appraisers and the umpire estimated only part of the damage caused by the windstorm, failing to take into consideration the damage to the front of his building and damage to the permanent fixtures and other items of property covered by the policy.

Thereafter, the case came up for trial on the foregoing issues, and the judge, after hearing the evidence, set aside the award of the appraisers and granted judgment in plaintiff's favor for the following amounts: $1,434.40 for damages to the insured building; $100 for damages to the permanent fixtures, furniture, floors, interior walls, wiring, painting and plastering and $75 for damages to plaintiff's stock of goods and merchandise, furniture and fixtures, walls and floors found to have been caused by rains occurring after defendant's refusal to permit plaintiff to repair the damage to the roof of his building. The defendant company has appealed from the adverse judgment.

The primary question presented for determination on this appeal is whether the award is binding upon the plaintiff. The policy provides:

"In the event of disagreement as to the amount of the loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each appointing one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of the loss; * * *"

In accordance with this covenant, the plaintiff and the defendant entered into a written agreement, submitting the amount of the loss and damage to appraisers, in which it was stipulated that:

"* * * the appraisement provided for by this agreement is for the purpose of ascertaining and fixing the sound value of said property and the amount of said loss and damage only, and that neither such appraisement nor this agreement to enter into same shall waive or invalidate any right or rights of either party to this agreement under said policy or policies or any provision or condition thereof."

[1] The plaintiff maintains that the award is not binding upon him for the numerous reasons which we have hereinabove set forth. However, we do not find that it is necessary to discuss all of the grounds advanced by him as it is our opinion that, since the appraisers failed and neglected to ascertain the sound value of the plaintiff's building in their appraisement of the loss, the award is null for that reason alone.

[2] The validity of stipulations in insurance policies (similar in language to the one under consideration) providing for an arbitration in case there is a disagreement as to the amount of the loss has been recognized in this State. See Hart v. Springfield Fire & Marine Ins. Co., 136 La. 114, 66 So. 558; Martin v. Home Ins. Co., 16 La.App. 216, 133 So. 773, and Officer v. American Eagle Fire Ins. Co., 175 La. 581, 143 So. 500. But, in order for the award of the appraisers to be binding, it must clearly appear that they have performed the duties required of them by the policy, which is the law between the contracting parties.

[3] In the instant case, the appraisers did not ascertain or estimate the sound value of the building. The policy and the agreement of submission clearly provide that this shall be done. The established jurisprudence of this country is that the failure of the appraisers to fix the sound value, where the policy requires it to be fixed, renders the award unenforcible. In Ætna Ins. Co. v. Murray, 66 F.2d 289, 291, the Circuit Court of Appeals of the United States for the Tenth Circuit said:

"The failure of appraisers to include in the award all of the property covered by the submission agreement renders the award invalid. Cooley's Briefs on Insurance, p. 6198; Ætna Ins. Co. v. Hefferlin [9 Cir.], 260 F. 695; Graff v. [National Liberty] Ins. Co., 107 Kan. 648, 193 P. 356. Where the policy and the agreement of submission requires that sound value be ascertained, the failure of the appraisers to ascertain the sound value invalidates the award. *Failure to so find cannot be treated as harmless, for by the policy and submission agreement, the parties so contracted.* Continental Ins. Co. v. Garrett [6 Cir.], 125 F. 589; Cooley's Briefs on Insurance, p. 6200." (Italics ours.)

[4] The necessity for the appraisers to ascertain the sound value of the damaged property under agreements of submission to arbitration identical with the one under consideration has likewise been recognized in Phoenix Ins. Co. v. Everfresh Food Co., 8 Cir., 294 F. 51, McInnes v. Southern Home Ins. Co., 142 S.C. 348, 140 S.E. 696; Mason v. Fire Ass'n of Philadelphia, 23 S.D. 431, 122 N.W. 423; Reliance Ins. Co. v. Bowen, Tex.Civ.App., 54 S.W.2d 597; National Union Fire Ins. Co. v. Ozburn, 51 Ga.App., 299, 180 S.E. 238; and Blaetz v. National Fire Ins. Co., Mo.App., 293 S. W. 504. While there are no authorities in Louisiana on the subject, we are disposed to follow the jurisprudence of the federal courts and our sister states in cases of this kind. Policy provisions requiring the insured to submit the amount of his loss to private appraisal, although valid, are somewhat in derogation of his right to have his dispute determined by the courts

and should be strictly construed. And, where, as here, the policy makes it mandatory for the appraisers to determine the sound value of the insured property, their failure to do so cannot be regarded as harmless.

Since we hold that the plaintiff is not bound by the award of the appraisers, the sole question left for determination is the extent and the amount of the loss. There is a dispute between the parties with respect to the damage to the front of the building where a displacement of the piers has caused the front wall to bulge outwardly. The defendant admits the presence of this damage but it contends, and the witnesses produced by it have testified, that it was in existence prior to, and was not caused by, the windstorm. The witnesses subscribing to the defendant's contention on this point are Mr. Edward F. Neild, an architect, Mr. L. A. Ellis, one of the appraisers, and Mr. S. W. Tudor, the umpire. They voiced the opinion that the bulge in the front of the building resulted either from subsidence of the soil, faulty construction or from causes other than the windstorm.

On the other hand, the plaintiff, Mr. J. R. Hall, a resident of Winnfield, Dr. S. C. Fittz, who rents offices on the second floor of the building, and Dr. A. W. Radescich, who rents offices in the building next to plaintiff's property, testified that the front of the building was in good condition and did not bulge until after the occurrence of the windstorm. In addition to this, Mr. W. O. Averett and Mr. John H. Kelsoe, plaintiff's contractors, stated that, in their opinion, the present condition of the front of the building is attributable to the storm.

The judge of the lower court apparently was of the view that the plaintiff's evidence on this question clearly preponderated over that of the defendant for, in fixing the damage to the building, he awarded an amount substantially in conformity with the estimates of Averett and Kelsoe, plaintiff's experts, of the cost to restore it to its prior condition. These estimates include the repair to the front of the property.

With respect to the amount of damages allowed by the trial judge, the defendant asserts that it is highly excessive and maintains that the evidence shows that the loss did not exceed the sum of $675 which was the amount of the award of the appraisers. It is true that Mr. L. A. Ellis, Mr. Tudor and one R. J. Jones, a general contractor, testifying for the defendant, stated that the damage to the building could be fully repaired for that sum or less but opposed to this we find the evidence of plaintiff's witnesses Kelsoe, who made an estimate to repair the building for the sum of $1,371.70, and Averett, who estimated the damage to the building to be $1,497.10. The two last named witnesses included in their appraisal the amount necessary to repair the front of the building whereas the defendant's witnesses did not consider that damage in fixing the loss at $675. They stated, however, that the bulge in the front of the building could be repaired for an additional $150 or $200.

Confronted with the foregoing diversion in the estimates, the district judge

concluded that the damage to the building amounted to $1,434.40. This award is substantially in accord with the testimony of Averett and Kelsoe whose evidence evidently impressed the judge. We are unable to discern manifest error in his finding on this question of fact for he saw and heard the witnesses and was in a much better position than we are to determine the weight to be given to the opposing statements of the defendant's experts.

The defendant finally complains of two other items of damage allowed by the trial court. These are items of $100 for damages to permanent fixtures and furniture, floors, interior walls, wiring and plastering, and $75 for damages to plaintiff's stock of goods, merchandise, furniture and fixtures, walls and floors resulting from rainfall occurring after defendant's refusal to permit plaintiff to repair the damage to the roof of his building.

 This complaint is well founded. In the first place, the defendant is not liable under the policy for damage to plaintiff's stock of merchandise or his furniture, whereas, it is responsible for damages to permanent fixtures, floors, interior walls, wiring, painting and plastering. Since the judge does not segregate the damage to fixtures, etc., for which the defendant was liable, from those which are not covered under the policy, we are unable to ascertain how much he allowed for the former. Furthermore, there is no proof in the record to sustain the awards of $100 and $75 for damages to the items mentioned. The plaintiff testified generally with respect to the damage to his merchandise, fixtures, etc., but he was unable to state with any degree of certainty the extent of the damage or how much it would cost to repair it. Under these circumstances, the claim for damage to these items should have been disallowed.

Under Act 229 of 1910, § 2 (Dart's General Statutes, Section 1977), we are given the power to tax the costs in this court as we deem equitable. The small reduction which must be made in the judgment is not, in our opinion, sufficient cause to warrant the taxing of the costs of this appeal upon the plaintiff.

For the reasons assigned, the judgment appealed from is amended by reducing the amount thereof to the sum of $1,434.40 and, as thus amended, it is affirmed. Defendant-appellant to pay all costs.