WALTER J. ROTHSCHILD, Judge.
| ^Plaintiff appeals the trial court’s July 15, 2011 judgments granting defendant’s Motion to Confirm Umpire’s Award and for Entry of Judgment of the Court in Conformity with the Umpire’s Award and denying plaintiffs Motion to Vacate Appraisal Award. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

This case arises from an insurance dispute between plaintiff, Dufrene Developers, Inc. (referred to as “Dufrene”), and defendant, Certain Underwriters at Lloyd’s, London, Severally Subscribing to Certificate No. 3051393 (referred to as “Underwriters”), which insured plaintiffs apartment building for windstorm damage. On August 28, 2006, Dufrene filed suit against Underwriters and others for damages to its six-unit apartment building located at 1354 Lake Avenue in Metairie, Louisiana, that were sustained during Hurricane Katrina. Thereafter, |sDufrene decided to invoke the appraisal provision in the insurance policy issued to it by Underwriters, which is available when the parties cannot agree on the amount of loss. The appraisal provision provides as follows:
2. Appraisal
If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two *399 appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
a. Pay its chosen appraiser; and
b. Bear the other expenses of the appraisal and umpire equally.
If there is an appraisal, we will still retain our right to deny the claim.
In accordance with the appraisal provision, Dufrene named Lewis O’Leary as its appraiser and filed a Motion for the Appointment of an Umpire in the trial court on March 10, 2010. Underwriters selected Mark Sturgess as its appraiser. By order dated June 30, 2010, the trial court appointed Robert Foley as umpire to settle the disparity between the damage figures provided by each party’s appraiser.
On September 14, 2010, Underwriters filed a Motion to Set Certain Procedures for Appraisal, and a hearing on the matter was held on October 13, 2010. In its October 20, 2010 judgment, the trial court granted Underwriters’ Motion to Set Certain Procedures for Appraisal and set forth rules and parameters for the appraisal process.
On October 22, 2010, Underwriters filed a Motion for In-Camera Review of Plaintiffs Appraiser’s Report and Submissions to Ensure Compliance with the Court’s October 20, 2010 Judgment. A hearing was held on December 13, 2010, and the trial court signed a judgment on December 17, 2010, granting the motion |4and indicating that it would review 18 attachments to Mr. O’Leary’s appraisal report that were questioned by Underwriters. On December 22, 2010, the trial court issued an order that only three of the attachments would be permitted to be provided to the umpire. The order further stated that the umpire should be given a list of the other contested attachments and he should request these documents if he deemed any of them to be necessary to his findings.
Both appraisers submitted their appraisal reports to the umpire. In Mr. O’Leary’s report, he opined that Dufrene should be awarded $258,808.07 from Underwriters. In Mr. Sturgess’ report, he opined that no additional money was due to Dufrene for wind damage to the property caused by Hurricane Katrina. Thereafter, on February 22, 2011, Dufrene filed a Motion to Disqualify Mark Sturgess from the Appraisal Process on the grounds that he was not an impartial appraiser. A hearing was held on May 9, 2011, and the trial court rendered a judgment on May 11, 2011, denying Dufrene’s Motion to Disqualify Mark Sturgess.
The report and ruling of the umpire, Robert Foley, was dated May 14, 2011. In his report, Mr. Foley concluded that no additional amounts were due to plaintiff from the insurance companies, because plaintiff suffered “no loss that has not been more than fully compensated by the insurers of this property, based upon the receipts that he produced.” Mr. Sturgess agreed with the umpire’s report.
On June 7, 2011, Underwriters filed a Motion to Confirm Umpire’s Award and for Entry of Judgment of the Court in Conformity with the Umpire’s Award. On June 28, 2011, Dufrene filed a Motion to Vacate Appraisal Award. Both motions came before the trial court for hearing on July 13, 2011. At the hearing, the trial court found that the umpire had complied with all of the requisite standards and insurance policy requirements. The trial court granted Underwriters’ | ¡¡Motion to *400 Confirm Umpire’s Award and for Entry of Judgment of the Court in Conformity with the Umpire’s Award, denied Dufrene’s Motion to Vacate Appraisal Award, and dismissed Dufrene’s claims for property damage sued for under the policy of insurance issued by Underwriters. Written judgments reflecting these rulings were signed by the trial court on July 15, 2011. Du-frene appeals.

DISCUSSION

On appeal, Dufrene sets forth three assignments of error. In its first assignment of error, Dufrene contends that the trial court erred by interfering with the appraisal process at the urging of Underwriters. It argues that the appraisal should have been done independently and that the umpire and appraisers should not have been “micro-managed” by the trial court’s procedural rules regarding their communications. It further asserts that the trial court should not have removed most of the attachments from Mr. O’Leary’s report, because the umpire must consider all of the materials relied on by the appraisers and none of the documents violated the appraisal procedures set by the Court.
Underwriters replies that the trial court properly exercised its jurisdiction to regulate the appraisal and to ensure that the procedure was conducted impartially, competently, and in accordance with the policy terms and relevant Louisiana law. They further contend that the trial court properly excluded certain attachments to Mr. O’Leary’s report, because submission of these documents to the umpire violated the court’s October 20, 2010 order and did not directly address the cost and scope of repairs, which was the only relevant inquiry for appraisal.
Appraisal clauses, such as the one in this case, are enforceable under Louisiana law, but they do not deprive a court of jurisdiction over the matter. See St. Charles Parish Hospital Service Dist. No. 1 v. United Fire and Casualty Co., |,681 F.Supp.2d 748, 758 (E.D.La. Jan.13, 2010). The Louisiana Civil Code sets forth guiding principles for construing contracts. Id.; Cadwallader v. Allstate Ins. Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580. An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763; Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). The judicial responsibility in interpreting insurance contracts is to determine the parties’ common intent. LSA-C.C. art. 2045; Huggins v. Gerry Lane Enterprises, Inc., 06-2816, p. 3 (La.5/22/07), 957 So.2d 127, 129. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. LSA-C.C. art. 2047; LeBlanc v. Aysenne, 05-0297, p. 3 (La.1/19/06), 921 So.2d 85, 89.
In the present case, the insurance policy contains an appraisal provision that does not set forth specific guidelines as to how the appraisal process is to be conducted. Although the appraisal process is generally not bound by all of the rules and procedures of a court proceeding, the appraisal provision in the insurance policy does provide for the involvement of the trial court in order to appoint an umpire if the appraisers cannot agree on one. Thus, some involvement of the courts is contemplated by the plain meaning of the words in the appraisal provision, and the language of the insurance policy does not restrict or limit the court’s involvement.
At the October 13, 2010 hearing on Underwriters’ Motion to Set Certain Procedures for Appraisal, the trial court noted *401 that an umpire is supposed to be independent and that the appraisers should not use memoranda or other materials, other than data and information prepared by each appraiser, to try to convince or 17persuade the umpire. He further stated that the appraisers are not to “overwhelm” the umpire and “that’s what I see is happening.” The trial court set forth the following guidelines for the appraisal process:
1. The appraisers appointed by each of the parties will be permitted to submit to the Umpire the written documents that they wish to be considered by the Umpire in the appraisal process within the time set by the Umpire.
2. All counsel and the opposing appraiser are to be copied simultaneously, with any and all reports, emails, letters, transmittals, documents, photographs, and/or other attachments submitted by an appraiser to the Umpire.
3. The written submissions by the appraisers for each party to the Umpire may consist of reports, estimates, photographs and/or other documents illustrating the scope of damages found and the cost of repair of those damages, and a statement of the appraiser’s findings and conclusions regarding the scope and repair of damages at 1354 Lake Avenue, Metairie, Louisiana 70001, exclusively.
4. Neither appraiser is to initiate any ex parte communications of any kind with the Umpire. Should the Umpire require contact with either appraiser, contact will be initiated or requested by the Umpire.
5. The Umpire may initiate contact with the appraisers, but the opposing appraiser is to be copied simultaneously on any correspondence between the Umpire and either appraiser. Should the Umpire initiate contact with both or either appraiser telephonically, the Umpire will schedule a conference call so that the opposing appraiser is in attendance.
6. Under no circumstances should the appraisers’ submissions to the Umpire include any documents which consist of, reference and/or include legal opinions; legal advice; treatises; narrative reports; cases; statutes or laws; legal documents; handouts; presentations or papers prepared by any law firm or attorney, and/or comments by the appraisal [sic] regarding counsel of record or matters outside the scope of damage and cost of repair.
7. The Umpire, Robert Foley, shall destroy and disregard the materials attached to and emails sent by Mr. O’Leary (Plaintiffs appraiser) to him via email on Tuesday, August 10, 2010 and Wednesday, August 11, 2010, as well as an email sent by Mr. O’Leary on August 17, 2010.
The record shows that the trial court was concerned that the umpire was being overwhelmed with the documents and/or communications sent to him regarding the appraisal in this matter. Thus, the trial court found that it was | ^necessary to set forth certain guidelines for the appraisal process to ensure that the process was fair, impartial, and efficient. The contractual language of the appraisal provision in the insurance policy does not prohibit the trial court from setting forth such guidelines, and we are unaware of any law prohibiting such guidelines under the circumstances of this case. We further note that the guidelines set forth by the trial court appear to be reasonable in order to *402 ensure that the process was fair and impartial.
We also cannot say that the trial court erred by excluding certain attachments from Mr. O’Leary’s report that the trial court found should not be reviewed by the umpire. The amount of damages to the property located at 1354 Lake Avenue was the issue before the umpire, not causation. According to Dufrene, some of its attachments included reports regarding damage to buildings in the area of the subject property and documents pertaining to damage indicators, wind patterns, building codes, descriptions of materials and equipment needed to repair the roof of a similar structure, water intrusion, and damage caused by window leaks. After performing an in camera inspection of the documents at issue, the trial court apparently found that these documents were not necessary for the umpire to review, but the trial court stated in its December 22, 2010 order that the umpire should be given a list of the contested attachments and he should request them if he deemed any of them necessary to his findings. The record does not provide any basis for this Court to disturb the trial court’s ruling.
Considering the entire record before us, along with the applicable law, we cannot say that the trial court erred by setting guidelines or “interfering” in the appraisal process. Accordingly, this assignment of error is without merit.
In its second assignment of error, Du-frene contends that the trial court erred by failing to disqualify Underwriters’ appraiser, Mark Sturgess, who was the |9original adjuster, from the appraisal process. It argues that the appraisal provision provides that each party will select a competent and impartial appraiser. Du-frene claims that Mr. Sturgess’ appraisal report included photographs taken by his investigator in 2005 that showed damage to units B and E, but Mr. Sturgess did not include an allowance for that damage in his 2005 adjustment or his appraisal report, even after the error was pointed out by Dufrene. Thus, Dufrene contends that Mr. Sturgess’ refusal to acknowledge his error and correct his mistake reveals his disregard for his professional duty and lack of fitness to participate in the appraisal process.
Underwriters responds that Mr. Stur-gess had over 27 years of experience as an adjuster and was unquestionably qualified to assess the damage to the property at issue. It also asserts that Dufrene’s mere accusation that Mr. Sturgess’ appraisal report contains errors is insufficient to find that he acted improperly during the appraisal process.
Federal courts have found that where a party challenges the use of a particular appraiser, evidence must be presented showing that the appraiser’s honesty or integrity is suspect. St. Charles Parish Hospital Service Dist. No. 1 v. United Fire & Casualty Co., 681 F.Supp.2d at 754. See also Dawes v. Continental Ins. Co. of City of New York, 1 F.Supp. 608, 605 (E.D.La. Oct. 22, 1932). We apply the same standard to the present case.
The evidence in the record before us does not demonstrate a lack of impartiality or competence on Mr. Sturgess’ behalf or that his honesty or integrity is suspect. Accordingly, we find that the trial court did not err by failing to disqualify Mr. Sturgess from the appraisal process, and this assignment of error is without merit.
|inIn its third and final assignment of error, Dufrene argues that the trial court erred by confirming an award that did not properly set the amount of loss. It complains that instead of making an indepen *403 dent valuation of the damage or amount of loss, Mr. Foley simply added up the repair receipts provided by Dufrene and declared that the receipts totaled less than Dufrene received from flood and wind insurance. Dufrene argues that Mr. Foley’s simplistic analysis identified amounts spent to repair the property but did not address whether the repairs were sufficient.
Underwriters responds that its appraiser and the umpire determined the amount of loss in accordance with the policy terms, and their determination is binding under the language of the policy which provides that “[a] decision agreed to by any two will be binding.” It asserts that the umpire considered all of the evidence and agreed with Mr. Sturgess’ report that no additional funds were due to Dufrene by Underwriters. Underwriters further argues that the policy terms did not require Mr. Foley to create his own estimate of damage and that reliance on one appraiser’s figures is not evidence of impropriety. It also contends that the umpire is permitted to rely on documents and evidence, including receipts and invoices produced by plaintiff, in formulating its award.
An appraisal award issued under an insurance policy is binding only if the appraisers “have performed the duties required of them by the policy, which is the law between the contracting parties.” Branch v. Springfield, Fire & Marine Ins. Co., 198 La. 720, 4 So.2d 806, 809 (1941). Where the appraisal provision of an insurance policy provides for two appraisers and an umpire and states that a decision agreed to by any two will be binding, the burden of demonstrating that the award should not be confirmed falls on the party challenging it. St. Charles Parish Hospital Service Dist. No. 1 v. United Fire & Casualty Co., 681 F.Supp.2d at 754.
|n Contrary to Dufrene’s contentions, the umpire’s report reveals that he did not simply “add receipts” in order to determine the amount of loss to plaintiffs property. According to his report, Mr. Foley considered the appraisal reports of Mr. O’Leary and Mr. Sturgess, along with several other documents. He also conducted an inspection of the property and had a roofer accompany him to perform an inspection of the roof. The umpire’s report notes that roofer’s inspection revealed that he saw no indication of wind-related damage or building shifts. Mr. Foley also considered moisture readings taken by Pontchartrain Contracting Services, Inc. shortly after the storm that showed no significant level of moisture or rain came through the roof into the ceilings or walls. We note that repairs to the property had already been made at the time of Mr. Foley’s inspection of the property, and we do not find that his reliance on receipts was improper. Based on the documents he reviewed, along with his observations and experience, Mr. Foley agreed with Mr. Sturgess’ appraisal report that no additional funds were due to Dufrene by Underwriters. Based on the evidence, we do not find that the umpire failed to properly perform his duties.
As previously stated, the appraisal provision provides that “[a] decision agreed to by any two will be binding.” Both Mr. Foley and Mr. Sturgess agreed that no additional funds were due to Dufrene by Underwriters. The record shows that the umpire and appraisers performed the duties that were required of them by the policy. Accordingly, we find that the decision of the umpire that was agreed to by Mr. Sturgess is binding on the parties. Considering all of the evidence before us, along with the applicable law, we find that the trial court did not err in confirming the appraisal award.

DECREE

|12For the foregoing reasons, we affirm the July 15, 2011 judgments of the trial *404 court, granting the Motion to Confirm Appraisal Award filed by Underwriters and denying the Motion to Vacate Appraisal Award filed by Dufrene.

AFFIRMED