POOL v. HENNESSY ET AL.   JONES v. SAME.   SHAW v. SAME. LIPPINCOTT v. SAME.   OLIVER v. SAME.   SPINK v. SAME. HALEY v. SAME.

**Appraisement:** APPRAISERS MUST BE DISINTERESTED PARTIES.   A lease for a term of fifteen years stipulated that, after the expiration of five years, for the purpose of determining the rent for the next five years, the parties should "each select an individual, and the two so selected shall choose a third and the three shall proceed to value and appraise," etc., and that the rent should be eight per cent upon the valuation: *Held*, that the lease contemplated the selection of impartial persons as appraisers, and that an award made where one of the appraisers was the brother and business agent of the party choosing him, should be set aside.

*Appeal from Scott District Court.*

TUESDAY, SEPTEMBER 22.

THESE actions are brought to set aside an appraisement of real property respectively held by the plaintiffs, under leases of portions of what is known as the " Catholic Square," in the city of Davenport, which leases commenced January 1st, 1867, and run for terms of fifteen years; the amount of rent to be fixed at the end of five years by an appraisement of the ground in the manner stipulated in the leases respectively.   The causes were tried by the court, and decrees rendered in favor of the plaintiffs.   Defendants appeal.   By agreement of parties the testimony was taken in but one case, but to be used in all, subject to objections for incompetency.   This mode was adopted because all the cases present substantially the same issues.   In this court they have been argued and submitted together.

*H. T. McNulty, John N. Rogers* and *W. T. Dittoe,* for appellants.

*Bills & Block,* for appellees.

MILLER, CH. J.—The plaintiffs in these suits, severally, leased portions of the premises in dispute from Rev. J. A. M.

Pelemourgues as the administrator of the estate of the Right Rev. Clement Smyth, deceased, each for a term of fifteen years, and at a fixed rent for the first five years. As to the rent for the next five years the leases each contain the following provision; "And from and after the first day of January, 1872, and up to the first day of January, 1877, the amount of rent to be paid for said premises by said second party shall be estimated as follows, to-wit: The parties to these presents, their heirs or assigns, shall, on the first day of January, 1872, each select an individual, and the two so selected shall choose a third, and the three shall proceed to value and appraise the real estate above described, and eight per cent. on the valuation of the land so made as aforesaid, shall be the amount of rent to be paid annually by said second party for said premises; and said second party hereby agrees to pay said first party an annual rent as above provided for said real estate, so made as aforesaid, for the years 1872, 1873, 1874, 1875, and 1876, payable semi-annually, up to the first day of January, 1877." After the making of the leases, and prior to January 1st, 1872, Right Rev. John Hennessy became the owner of the real estate subject to the leases.

In December, 1871, the plaintiffs selected J. M. Eldridge, a land agent of the city of Davenport, as one of the appraisers to appraise the property under the terms of the lease, and of such selection they gave notice to W. T. Dittoe, Esq., the attorney of Bishop Hennessy. The bishop did nothing toward having the property appraised until some time about the middle of May, 1872, when he sent his brother and business agent, D. J. Hennessy, from Dubuque, where both resided, to Davenport, authorized and chosen to act as one of the appraisers. The said D. J. Hennessy came to Davenport and, without any notice to any of the plaintiffs that he was acting as an appraiser on behalf of his brother, Bishop Hennessy, procured the appointment of James Thompson as the third appraiser, and they, together with Eldridge, chosen by plaintiffs, proceeded to, and did, without notice to, or knowledge by any of the plaintiffs, appraise said property, and thereupon notified each of plaintiffs of such appraisement after it was made,

which was the first notice or knowledge plaintiffs had that said appraisement was made or that the said D. J. Hennessy or James Thompson had been chosen or appointed appraisers.

One of the grounds of complaint on the part of plaintiffs is that the appraiser appointed on the part of Bishop Hennessy was his brother and confidential business agent. That he was such there is no manner of doubt, indeed it is not questioned that he did sustain these relations, but it is claimed that since the lease authorized each party to select an individual for himself and those two to select a third, that it was "optional with the parties to select whomsoever they chose, without restriction as to interest or partiality."

It seems to us that such a doctrine cannot be admitted. The very fact that the parties to the lease stipulated for the submission of the question of the value of the leased premises, as a basis for the rent, to persons to be chosen in the manner provided, conclusively shows that they intended to have the value established by an impartial tribunal. The object and purpose in providing for an appraisement, in the mode mentioned in the leases, it is manifest was to secure a fair and just valuation of the leased premises as a basis for the second five years of the term. This purpose could be attained only by the selection of fair and impartial persons as appraisers. The person to be selected by the respective parties ought not to be respectively the agent of the parties. If this were allowed it would be the same in effect as the parties themselves, acting in their own behalf as appraisers, for what a man does by his agent he does by himself. The persons selected as appraisers should be indifferent between the parties. They should be impartial judges. The fact that, by the stipulations of the lease, each party was authorized to chose one appraiser does not lead to the conclusion claimed by appellants. The authority to choose confers no authority to choose an improper person. This provision of the lease merely provides a mode by which the tribunal shall be created, which is to determine the question of the value of the property for the purposes of the lease. That the parties expected that this should be an impartial tribunal that would place a fair and just valuation

upon the leased premises, cannot be doubted. That they intended the contrary will not be presumed, and will not be held in the absence of express words to that effect.

True, it is not stated in express words that the appraisers shall be "disinterested," "impartial," or "indifferent" persons, but in the absence of anything to manifest a contrary intention this must be presumed.

For the reasons that one of the appraisers was the brother of the defendant and his business agent, and that these facts were not known to the plaintiffs until after the appraisement was made, the court below decided rightly in setting the appraisement aside.

The plaintiffs are entitled to an impartial tribunal to fix the value of the leased premises on the first day of January, 1872, as provided in their respective leases.

. The judgment of the court below is

AFFIRMED.