PRODUCE REFRIGERATING COMPANY v. NORWICH UNION FIRE INSURANCE SOCIETY and Others.[1]

January 8, 1904.

Nos. 13,606—(141).

**Insurance—Arbitration.**

In an action to set aside the award of arbitrators appointed to assess damages caused by fire, as provided by the Minnesota standard policy, *held*:

1. The evidence supports the finding of the court to the effect that one of the arbitrators was not impartial and disinterested.

2. That the insured did not have such knowledge of the arbitrator's disqualification as would prevent it from objecting to the award.

[1] Reported in 97 N. W. 875; 98 N. W. 100.

3. That the insured did not accept the award or recognize its validity, and did not unreasonably delay its repudiation upon the ground that the arbitrator was not disinterested and unprejudiced.

4. The finding of the court as to damages is supported by the evidence.

5. The complaint having stated the ground upon which the award was claimed to be invalid, appellants had the option of submitting to a new appraisement, or standing upon the validity of the award; and, having elected to stand upon the award, they are bound by the judgment.

Action in the district court for Hennepin county to set aside an award made by referees under the terms of the Minnesota standard fire insurance policy, and to recover from defendants, upon their respective policies of insurance, the amount of damages suffered by plaintiff through fire. The case was tried before Brooks, J., who found in favor of plaintiff and directed judgment against defendants for the aggregated sum of $10,000. From an order denying a motion for a new trial, defendants, other than Imperial Insurance Company, Limited, appealed. Affirmed.

*Cohen, Atwater & Shaw,* for appellants.

*M. H. Boutelle* and *N. H. Chase,* for respondent.

LEWIS, J.

Respondent owned a certain building in Minneapolis, constructed and used for the purpose of refrigerating perishable products—principally eggs and butter. Appellants issued fire insurance policies upon the building, and during the life of the policies, on November 30, 1901, a fire occurred, which resulted in considerable damage. The construction of the building was peculiar, in that it consisted of series of parallel walls, floors, and ceilings of wood and paper, divided into compartments, and filled with mineral wool and shavings; the purpose being to maintain a uniform temperature and humidity within the insulated rooms. In accordance with the provisions of the standard policy, appraisers were selected to determine the loss; and on February 4, 1902, an award was made by two of the three appraisers, fixing the damage at $5,426.82. Respondent refused to accept the amount of the award, and brought this action to set it aside upon the ground that it was illegal and void, and to recover the amount of respondent's damage.

The court below, so far as pertinent to the present inquiry, found that

the immediate damage caused by the fire was $10,000; that the two original arbitrators were Horace N. Leighton and George W. Libbey, and, they being unable to agree upon a third arbitrator, the court appointed Frederick H. Fall; that, after considering the matter submitted to them, Leighton and Fall agreed upon and returned an award, in which it was found that just preceding the fire the insured property was of the value of $19,855.36, and that the direct and immediate damage by reason of the fire was $5,426.82; that the arbitrator Libbey refused to concur in or sign the award; that respondent refused to accept it; and that appellants at all times insisted upon its validity, and that it was a final determination of the matter.

The court further found that the arbitration and award was not in accordance with the requirements of the policies and the law, and that it was not the result of disinterested appraisers; that Leighton was not a disinterested arbitrator, but was biased and prejudiced against respondent and in favor of appellants, and that such bias and prejudice influenced his action and judgment upon such arbitration; that Leighton was one of three persons named by appellants and submitted to respondent in pretended compliance with the terms for arbitration, as provided in the policies, from whom respondent was required to choose one of the arbitrators; that it was at that time known to respondent and to appellants that Leighton had within three months prior thereto acted in a like capacity as a referee on the nomination of fire insurance companies in determining loss on a cold storage plant at Hudson, Wisconsin; that to induce respondent, notwithstanding the fact that Leighton had so acted, to consent to his selection, appellants offered and proposed that if respondent would choose Leighton as one of the arbitrators, from the persons so named by appellants, they would choose as arbitrator any person respondent might name; that, in order to induce respondent to accept such offer, appellants represented and stated to respondent that Leighton was the most competent, fair-minded, and conscientious man appellants could submit, and, relying upon such statements and representations, respondent accepted the proposal, and selected Leighton as one of the arbitrators; that respondent at no time agreed or consented that any of the arbitrators should be interested, biased, or prejudiced in favor of or against any party to the arbitration; and that respondent did not, until after the award was

made, have or acquire any knowledge or notice that Leighton was not in fact a disinterested, fair, and impartial arbitrator. The court further found that respondent did not unreasonably delay its repudiation of the award, or the bringing of an action to test its validity and determine the amount of its loss.

The following questions were submitted by appellants upon this appeal: (1) That there is not evidence sufficient to sustain the finding that Leighton was biased or prejudiced; (2) respondent having taken part in the reference with knowledge of Leighton's relation to the insurers, it is estopped from attacking the award on the ground of alleged bias and impartiality; (3) respondent ratified the award by its conduct in not asserting its invalidity upon the ground of Leighton's prejudice until the commencement of this action; (4) that in any event the trial court should have ordered a new appraisal, instead of assessing damages, and that the damages are excessive.

1. It is the general rule that a person is disqualified to act as arbitrator who has any secret interest in the result or decision of the controversy, or if there exists any relationship or family connection between the arbitrator and a party to the submission, or if he had formed an opinion or is otherwise prejudiced in respect to the subject-matter. The board of arbitrators is a quasi court, governed by rules applicable to common-law arbitration, and should constitute a body of disinterested men, whose business it is to proceed in a judicial and impartial manner to ascertain the facts in controversy, without regard to the manner in which the duty has been devolved upon them. Levine v. Lancashire Ins. Co., 66 Minn. 138, 68 N. W. 855; Christianson v. Norwich Union Fire Ins. Soc., 84 Minn. 526, 88 N. W. 16. Arbitrators not avowedly selected as partisans are, indeed, bound, as in the execution of a joint trust, to look impartially at the true merits of the matter submitted to their judgment. Morville v. American, 123 Mass. 129. An arbitration is a judicial proceeding, and the arbitrators, being alike the agents of both parties, and not of one party alone, are bound to exercise a high degree of judicial impartiality, without the slightest regard to the manner in which the duty has been devolved upon them. Grosvenor v. Flint, 20 R. I. 21, 37 Atl. 304.

But while neither natural nor legal disabilities hinder a person from being an arbitrator, provided the fact is known to the parties at the time

of the submission, still, as he is the agent of both parties alike, and impartiality is the fundamental requisite, the court closely scrutinizes the action of an arbitrator whose relation to one of the parties was such as to naturally influence the judgment even of an honest man. Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276. The Minnesota standard policy requires that the arbitrators shall be three disinterested men, and, the arbitration being compulsory, it is highly important that the men selected should in every sense be disinterested. In Bradshaw v. Agricultural, 137 N. Y. 137, 32 N. E. 1055, it was said: "It cannot be that the word 'disinterested,' as used in the policy, is confined to a lack of pecuniary interest in the question of loss," but requires the appraiser to be one not biased or prejudiced. But the arbitrators should not be lightly set aside. Neither are they bound by the same strict rules as courts in their investigations. Levine v. Lancashire Ins. Co., supra. The legal presumption is that the arbitrators did their duty. Liverpool v. Goehring, 99 Pa. St. 13.

The evidence upon which the court based its finding that Leighton was a prejudiced and partial arbitrator is that for many years he had been selected by insurance companies as an arbitrator, estimator, or appraiser, and had also often been so selected by the insured; that his income from this source during the three years preceding the trial was about $1,000 per annum, and, as a result of such arbitration, he had obtained contracts for rebuilding amounting to about $25,000 a year for the same length of time. A representative of appellant companies urged Leighton's selection, stating that he was the most competent, fair-minded, and conscientious man insurers could name. He was at first objected to by respondent because it had learned that he had recently acted as referee in a similar loss at Hudson, but nevertheless he was selected under an agreement that appellants would accept any one respondent might suggest.

After the arbitrators were chosen, Leighton and Libbey visited the plant in the absence of the third arbitrator; and Leighton made the statement to Libbey that they might adjust the fire damage, but that he understood they were going to make large claims for damages by water—that cold storage companies always did in these cases—and he thought when they came to that part of it they had better have Mr. Fall with them, to comply with the law. Thereupon they adjusted

the fire damage, which was afterwards concurred in by Fall.  On different occasions while the arbitrators were at work, Leighton referred to the Hudson loss, stating it was claimed to be a total loss, on account of being wet, but he understood they were using the building without tearing out a large portion of it.  During their investigations, Libbey charged Leighton with being a representative of the insurance companies; and Libbey advised Fall, the third arbitrator, to not lay too much stress upon what Leighton said; that, while he was an honest man in these matters of insurance, he was simply acting as an attorney working for his client—in reply to which Leighton retorted that he had represented his client no more earnestly than Libbey had his.

The main contention between the arbitrators was as to how much the insulation walls were damaged by water.  Libbey insisted that they were all practically ruined, while on the other hand Leighton insisted that a large percentage could be dried out and used again.  The evidence discloses that the disagreement between the two men was positive from beginning to end, but that Fall practically coincided with Leighton's views, and so the award was made.

The impression we get from a consideration of Leighton's conduct in his investigation is that he entered upon the inquiry in a friendly attitude to the insurance companies.  His state of mind was probably occasioned by his long associations with insurance companies in adjusting losses of a similar character, and from the fact that he had a considerable income from that source, as well as from indirect sources in obtaining contracts for reconstruction work.  His attitude all through the investigation indicates that his purpose was to reduce the amount of the award to a minimum.  While his conduct may have been consistent with an honest judgment, we cannot avoid the conclusion that his views and decisions were not of that impartial and disinterested character required of one who is called upon to assume the important duties of an arbitrator.  In the light of the evidence before the trial court as to the nature and extent of the damage by water, the great discrepancy between the amount found to have existed and the amount returned by the award, the trial court was justified in finding that Mr. Leighton was not a fair-minded and disinterested arbitrator.

2. While the law contemplates the selection of impartial and disinterested arbitrators, if a party has knowledge of the fact that any

one selected is prejudiced or interested on behalf of the opposite party, yet consents to his acting as such, he cannot complain of the result. If the parties to the controversy prefer to turn the inquiry from a judicial into a wire-pulling contest, the courts will not render them relief. But there is no evidence in this case to justify the holding that respondent knew Leighton was not qualified to act. Knowledge by respondent of his prejudice is limited to the fact that he had often appeared as an arbitrator, and that he acted as such in the Hudson cold storage inquiry, but there was nothing to indicate it had any reason to suspect that his experience would cause him to be otherwise than just and fair in his decision. The law does not prohibit men from taking part as arbitrators simply because they may have knowledge of a matter under consideration. Indeed, such experience is regarded as a qualification enabling an arbitrator to understand and apply the evidence to the subject-matter. As intimated by the trial court, the prejudice of Leighton was perhaps unknown to himself, and may have been an unconscious bias resulting from his long experience and connection with insurance companies. So much less, therefore, should respondent be expected to comprehend the nature and extent of the influence by which he was dominated. And in addition, the representatives of respondent were assured by persistent and positive statements by appellants that Leighton was a conscientious and just person in the settlement of such disputes, and, their acquaintance with him being limited, they were justified in accepting the assertions as true.

3. The award was returned February 4, 1902, and there followed considerable correspondence between respondent and the different appellant companies with reference to an alleged agreement on the part of the companies to rebuild, in case respondent should so elect, after the award was made. This agreement was specifically denied by appellant companies, and it is assumed that because respondent insisted there had been such an agreement, and that it should be complied with, respondent waived all other objections to the award. The conduct of the parties does not warrant this conclusion, and the finding of the court is sustained by the evidence, which is to the effect that respondent at all times refused to accept the award, did not recognize its validity, and did not unreasonably delay its entire repudiation upon the ground of prejudice by the commencement of this action. It is clear

that respondent never intended to accept the award, always repudiating it, insisting upon a resubmission, and made a request to that effect. Appellants denied they had ever entered into any agreement to rebuild at the option of respondent, refused to resubmit the question to arbitration, and always insisted upon the validity of the award.

4. While true that the specific ground which formed the basis of the action was not mentioned until it appeared in the complaint, appellants were not prejudiced thereby. The allegations of the complaint furnished them with direct and positive specifications as to the claims of respondent with respect to the award, and if they preferred to resubmit to another arbitration, rather than contest the validity of the award, they still had the opportunity at the time of serving their answer in the action. Having elected to defend upon the ground that the award was valid, they are in no position to raise the question that they were not notified of the object of the suit. In Christianson v. Norwich Union Fire Ins. Soc., supra, it was stated that if an award is attacked upon the ground of fraud or misconduct of the referees, and one party to the controversy notifies the other of that fact, demanding a reappraisement on account of such misconduct, it then becomes the duty of the other party to investigate the validity of the charges, and determine whether or not it will abide by the award, or submit to reappraisement; and if it shall elect to abide by the award, and the same is adjudged illegal, there can be no resubmission to other referees, but the damages may be determined in the action brought to set aside the award. Such was the position of appellants after service of the complaint in this action. They had the option of submitting to a new appraisement, or of standing upon its validity.

The evidence fairly supported the finding as to the amount of damages.

Order affirmed.


On January 29, 1904, the following opinion was filed:


PER CURIAM.

The date from which interest should be computed not having been disposed of by the former decision, a reargument was granted upon that question.

The order of the trial court directed judgment to be entered, with interest from February 4, 1902, the date of the award returned by the arbitrators. At the argument it was stipulated that the conclusion of law to this effect should be treated as amended so as to direct the computation of interest from April 8, sixty days thereafter. It is now submitted by respondent that interest should run from September 16, 1902, the last day for answering, as specified in the summons.

The standard policy provides that the loss shall be paid within sixty days after the insured submits a statement containing proofs of loss, and that the insurer "shall not in any case be liable for more than the sum insured, with interest thereon from the time when the loss shall become payable as above provided." Laws 1897, pp. 470, 471 (c. 254). The clear import of this language is that interest shall begin to run sixty days after the proofs are submitted, unless the date such liability attaches is changed by submission to an award, or the insurer exercises its option to rebuild. In the latter case, there would be no interest. In the case of arbitration, the loss, as adjusted by the referees, becomes payable sixty days after the award is returned. It stands admitted that interest should be computed from April 8, unless the case is governed by Schrepfer v. Rockford Ins. Co., 77 Minn. 291, 79 N. W. 1005.

In that case the insurer demanded a reference, which was refused by the insured. Several months later the insured demanded a reference, which the insurer rejected. Upon the theory that, where the loss was not adjusted between the parties, a determination of the loss by arbitration was a condition precedent to any right of action, the delay having been occasioned by fault of the insured, the court awarded interest from the date of the refusal of the insurer to submit to arbitration.

In the present case there was an award, and, if respondent was guilty of any fault at all, it was delay in rejecting the award upon the ground stated in the complaint. It is held in the main decision that such delay was not unreasonable; that respondent was not estopped thereby, and the appellant was not prejudiced. The award stood as the proper adjustment of the loss, subject to such changes as might be made as a result of the action. The delay in commencing the suit could have no bearing upon the question of interest. Appellant could stop interest

on the amount of the award by making a proper tender.   But the mere fact that the amount, as found by the court, exceeded the award, would not change the date from which interest commenced, for the amount of the loss, as was found by the court, was in the nature of a substitute for the award, and must be considered as of the date the award was returned.

Order affirmed.