CENTRAL LIFE INSURANCE COMPANY, Appellee,

v.

AETNA CASUALTY & SURETY COMPANY, Appellant.

No. 89–1611.

Supreme Court of Iowa.

Feb. 20, 1991.

Robert V.P. Waterman and Thomas D. Waterman of Lane & Waterman, Davenport, for appellant.

Mark McCormick and Margaret C. Callahan of Belin, Harris, Helmick, Tesdell, Lamson, McCormick, P.C., Des Moines, for appellee.

SCHULTZ, Justice.

This appeal presents issues arising out of an appraisal provision in a fire insurance policy. Central Life Insurance Company (Central) was the insured under a policy issued by Aetna Casualty and Surety Company (Aetna). Following a fire loss on June 23, 1987, Central invoked the appraisal process under the policy resulting in an award of $522,233. Aetna filed a declaratory judgment action in district court seeking to vacate the award. Central not only resisted vacation of the award, but in a separate action also sought damages from Aetna for bad faith in failing to pay the award. Aetna's case was consolidated into Central's action.

Both parties filed separate motions for partial summary judgment regarding the

award. The district court, Judge Glenn E. Pille, upheld the appraisal process and the resulting award by sustaining Central's motion and entering judgment for the amount of the award. Following a jury trial on the bad faith claim, the district court, Judge Arthur A. Gamble, entered an additional judgment against Aetna in the amount of $39,514. Aetna appeals from both judgments. Central cross-appeals and seeks greater damages on the bad faith judgment. We reverse both judgments.

In 1985, Central purchased an entire block of real estate with three buildings on it in downtown Des Moines. Aetna's policy provided fire insurance with a $700,000 blanket coverage of the three buildings. In 1987 Central demolished one building and requested that it be deleted from coverage, but the amount of coverage was not reduced. An arson fire occurred in this building while it was being demolished, damaging the other two buildings. Aetna and Central disagreed on the amount of loss under the policy.

Rather than negotiating a settlement between themselves, each party retained independent representatives to aid in this task. Aetna hired a professional appraiser and consultant from a small city outside of Des Moines. His fee was billed on an hourly basis. Central employed a Des Moines adjustor and appraiser to represent it in negotiating a settlement. By written agreement, Central's adjustor's fee was based on a percentage of the settled loss.

The representatives were unsuccessful in settling the loss. Central's representative determined the loss to be $767,619 and filed a proof of loss requesting $700,000—the amount of the policy limit. Aetna, relying on its representative's appraisal and damage assessment, determined the loss under the policy to be $132,344. Central immediately requested that the loss and damage be resolved by the process of "appraisal" under the terms of the policy.[1] Central

---

1. The appraisal provision of the policy provides:
 *Appraisal.* In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a

competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree

and Aetna in turn selected their employed representatives to act as appraisers.

Meanwhile, Central and Aetna entered into a written agreement entitled "Agreement for Appraisal" (appraisal agreement), which was suggested by Central's representative and drafted by Aetna's attorney. The agreement provided for the appointment of Central's and Aetna's representatives as appraisers who would then select a competent and disinterested umpire. The agreement did not provide an alternate method governing the selection of an umpire if the appraisers failed to agree on the selection.

The appraisers failed to agree on an umpire and requested that a district court judge make the selection. Both appraisers and Aetna's lawyer appeared before the judge and made suggestions on the appointment of an umpire. In a letter, the judge notified the two appraisers of the selection of an umpire, a Des Moines man who was previously suggested by Central's appraiser and rejected by Aetna's appraiser.

The court-appointed umpire's action determined the award. By letter, he requested that both appraisers submit all materials pertaining to the loss and told them that after a review of the materials and a physical inspection of the buildings, "I shall contact you for further discussion." Both appraisers submitted their previous estimates of loss. The umpire then contacted Central's appraiser and discussed his calculations. Even though the umpire stated that he had difficulty understanding Aetna's appraiser's materials, he never contacted Aetna's appraiser for clarification. Without notifying Aetna's appraiser, Central's appraiser accompanied the umpire during a two-hour inspection of one of the buildings.

The umpire submitted his appraisal award which adopted the calculations of

Central's appraiser. After the umpire made his award, Central's appraiser calculated the amount payable under the co-insurance clause of the insurance policy less the deductible as $522,233. Dissatisfied with the appraisal award, Aetna secured another appraisal firm to conduct an inspection and appraisal of the loss. This appraiser determined that the amount due under the policy was $180,932. Aetna tendered this amount to Central who rejected it.

Aetna then initiated this declaratory judgment action, seeking to vacate the umpire's award on several grounds. During discovery, Aetna learned of Central's contingency-fee agreement with its appraiser. It also learned that the court-appointed umpire and Central's appraiser had ex parte communications, including a joint inspection of the damaged buildings, and prior business dealings. Aetna asserted these facts as additional support for vacating the award. Central commenced a law action seeking enforcement of the appraisal award and damages for Aetna's bad faith refusal to pay the umpire's award. On Central's motion, the district court consolidated the cases for trial.

Each party moved for partial summary judgment on the appraisal award. The court sustained Central's motion and entered judgment for Central in the amount of $522,233 with interest from the date of loss. Central's bad faith claim was then tried to a jury which resulted in a verdict allowing Central compensatory damages of $39,514. At trial, the court limited the jury's consideration of compensatory damages to the amount of attorney fees incurred by Central in enforcing the appraisal award through the pretrial partial summary judgment proceedings. Even though the jury determined that Aetna acted in bad faith, it awarded Central no punitive

upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash values and loss to each item; and, failing to agree shall submit their differences, only to the um-

pire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

damages. After the jury verdict, the court denied Central the recovery of attorney fees incurred in prosecuting the bad faith claim. Both parties appeal from the resulting judgment.

Aetna claims that if summary judgment is appropriate at all, the district court should have awarded it only to Aetna. It asserts that the jury verdict awarding Central compensatory damages on its bad faith claim must be set aside. It claims that reversal of the partial summary judgment will also defeat Central's bad faith claim and the verdict of $39,514. Finally, it claims that the interest should accrue from sixty days after the appraisal award pursuant to the loss payable clause of the policy rather than from the date of the fire loss. On cross-appeal, Central urges that it is entitled to attorney fees incurred in prosecuting its bad faith action. We address these issues in order.

I. *Summary judgment.* A summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). Our review of the grant of summary judgment is for correction of errors at law. Iowa R.App.P. 4.

Each party claims the undisputed facts support its motion for partial summary judgment on the appraiser's award. Aetna requested that the award be declared invalid because Central's appraiser was interested in the outcome and further challenged the umpire's procedures and partiality. Central defended the qualifications of its designated appraiser and the umpire's actions. It sought enforcement of the award.

 A. *Appraisal process.* An appraisal is a supplementary arrangement to arrive at a resolution of a dispute without a formal lawsuit. Provisions for appraisal of an insurance loss, whether under policy terms or pursuant to independent agreement, are valid and binding on the parties. 6 J. Appleman & J. Appleman, *Insurance Law and Practice* §§ 3921, 3924 (rev. 1972). Appraisal awards do not provide a formal judgment and may be set aside by a court. When reviewed, the award is sup-ported by every reasonable presumption and will be sustained even if the court disagrees with the result. *Id.* § 3941; *see also First Nat'l Bank v. Clay,* 231 Iowa 703, 713–14, 2 N.W.2d 85, 91 (1942). We have reasoned that private resolution of disputes is favored by the law because it serves as an inexpensive and speedy means of settling disputes over matters such as the amount of loss and value of the property in question. *First Nat'l Bank v. Clay,* 231 Iowa at 713, 2 N.W.2d at 91. The award will not be set aside unless the complaining party shows fraud, mistake or misfeasance on the part of an appraiser or umpire. J. Appleman & J. Appleman § 3941; *Clay,* 231 Iowa at 713–14, 2 N.W.2d at 91.

B. *Qualification of Central's appraiser.* Aetna urges that Central's agreement to pay its appraiser a contingent fee based on a percentage of the amount of loss recovered causes the appraiser to be interested, which precludes summary judgment and mandates setting aside the award. Central resists Aetna's contention by maintaining that the appraisal agreement did not require the parties' appraisers to be disinterested. The district court held that Aetna had waived its objection to Central's appraiser and, in addition, would not be permitted to complain about Central's appraiser when it had chosen an advocate as its appraiser.

The appraisal provision in the insurance policy differs from the appraisal agreement. The insurance policy provision requires the selection of a "disinterested appraiser" whereas the appraisal agreement merely identifies by name the parties' previously selected appraisers without including any words of qualification. Central maintains that the subsequent appraisal agreement modifies the policy provision. Central also urges that both parties were aware that the other had selected a person as its appraiser who would act as an advocate and the requirement that the appraisers be disinterested had been abandoned.

We have long recognized that the object and purpose of an appraisal is to secure a fair and just evaluation by an impartial

tribunal. *Pool v. Hennessy*, 39 Iowa 192, 194 (1874). One authority elaborates on this goal of impartiality by stating:

> Arbitrators or appraisers who may be selected to adjust a loss should be disinterested, and not represent the parties selecting them. The term "disinterested" has been used in the sense of meaning competent, impartial, and substantially indifferent between the parties. It is intended that such persons shall be fair and unbiased, since they are acting in a quasi-judicial capacity. It means more than merely a lack of pecuniary interest in the outcome.

J. Appleman & J. Appleman § 3927. On the other hand, in *Clay* we recognized the practical limitations of selecting a wholly disinterested arbitrator (appraiser) and stated:

> Choosing arbitrators wholly disinterested is an admirable standard to aspire to, but the parties seldom do that, and if all awards were set aside in which it was not done, few awards would stand.

*Clay*, 231 Iowa at 716, 2 N.W.2d at 92.

■ The first blush inconsistencies in these two authorities fade under scrutiny. The appraisal procedure involves an adjudication of a dispute between parties; however, the selected participants must act fairly, without bias, and in good faith. The intent of the appraisal procedure is not to provide appraisers who possess the total impartiality that is required in a court of law. The appraisers do not violate their commitment by acting as advocates for their respective selecting parties. However, appraisers should be in a position to act fairly and be free from suspicion or unknown interest. *See Koopman v. Farmers Mut. Hail Ins. Ass'n*, 209 Iowa 958, 962, 229 N.W. 221, 222 (1930).

■ We cannot agree that the appraisal agreement eliminates the requirement that the appraisers be disinterested. This agreement requires one of the appraisers and the umpire to jointly arrive at a decision. This places the appraiser in the position of decision-maker; thus, the function of the appraiser becomes quasi-judicial. *See Koopman*, 209 Iowa at 962, 229 N.W.

at 222. An inherent qualification for a quasi-judicial decision-maker is disinterest in the result. *Pool*, 39 Iowa at 195. Consequently, the omission of the word "disinterested" in describing "appraiser" in the appraisal agreement does not eliminate the requirement. Furthermore, we have defined a disinterested person to be one without a pecuniary interest. *Kraft v. Tennigkeit*, 204 Iowa 15, 17, 214 N.W. 562, 563 (1927). Due to the contingent fee arrangement, Central's appraiser was interested because he had a direct financial interest in the dispute.

■ The district court ruled that Aetna waived any possible objections to the partiality of Central's appraiser "because it did not object to his appointment as Central's appraiser, even though it knew [the appraiser] was biased, predisposed and partial to Central's interests." The court also concluded that the fee arrangement "did not materially alter the nature of his partiality so as to give Aetna grounds to disqualify him as 'interested'. . . ." We disagree with this conclusion. First, a basic element of waiver is knowledge and intent to relinquish a right. *Scheetz v. IMT Ins. Co.*, 324 N.W.2d 302, 304–05 (Iowa 1982). It is undisputed that Aetna did not know of the contingent fee arrangement. Thus, it did not know that Central's appraiser had a direct financial interest in the award. It could not intend to relinquish what it did not know. The record indicates that Aetna knew that Central's appraiser was acting as an advocate and that its own appraiser acted similarly. Even though advocacy may make an appraiser partial, it does not implicate disqualification as does a pecuniary interest in the outcome of the appraisal.

■ Central also argues that Aetna is barred by the doctrine of clean hands. It contends that a party who employs an interested appraiser cannot complain that the other party in the appraisal process has also employed an interested appraiser. Even though Central has accumulated facts showing that Aetna's appraiser was an active advocate for Aetna's position, it presents no evidence showing that Aetna's

appraiser had a financial or other disqualifying interest in the litigation.

Central also argues that Aetna failed to show prejudicial misconduct on the part of Central's appraiser. It emphasizes that its representative presented the same amount of loss both in the position of appraiser as in the position of Aetna's adjuster. We believe, however, that a showing of prejudicial misconduct is not required. The appointment of an appraiser with a concealed pecuniary interest in the outcome is a sufficient ground for voiding the award as a matter of law without a showing of prejudice. *Edwards v. Employers Mut. Liab. Ins. Co.*, 219 Ga. 121, 124–25, 132 S.E.2d 39, 42 (1963); *Produce Refrigerating Co. v. Norwich Union Fire Ins. Soc'y*, 91 Minn. 210, 213, 97 N.W. 875, 876 (1904); *Orr v. Farmers Mut. Hail Ins. Co.*, 356 Mo. 372, 375–81, 201 S.W.2d 952, 954–57 (1947); *see also Pool*, 39 Iowa at 194–95.

Because Central's appraiser's fee was based on a percentage of the settled loss, we hold that Aetna's motion for partial summary judgment to vacate the appraisal award should be sustained. We remand to the district court to enter an order declaring the appraisal null and void.

C. *Acts of umpire.* Aetna raised complaints concerning the umpire's conduct. These complaints include the ex parte communications between Central's appraiser and the umpire, the nondisclosure of their prior dealings, and the failure of the umpire to contact Aetna's appraiser for further discussions as promised. Because of our holding that Central's appraiser's pecuniary interest in the outcome invalidates the award, we need not answer these complaints.

The selection of an umpire by a district court judge is an issue that we wish to address for the benefit of bench and bar even though it was not raised by the parties. We speak to the authority of the district court to appoint an umpire at the request of nonlitigating parties to a private contract. The record is sparse but it appears that Aetna's attorney and appraiser and Central's appraiser orally requested that a district judge, who otherwise did not participate in this proceeding, appoint an umpire. The judge, in turn, appointed an umpire by letter without making a court record. Under these circumstances, we conclude that the district judge lacked authority to appoint an umpire.

A district court, a court of general jurisdiction, has a duty to hear and determine cases properly before them. *Kruidenier v. McCulloch*, 257 Iowa 1315, 1317, 136 N.W.2d 546, 547 (1965). The district court should not act on matters not prescribed by statute or otherwise properly before it. When a court acts without legal authority to do so, it lacks jurisdiction of the subject matter and any action taken is generally void. *Wederath v. Brant*, 287 N.W.2d 591, 595 (Iowa 1980). Jurisdiction cannot be conferred by consent, waiver or estoppel. *Lloyd v. State*, 251 N.W.2d 551, 556 (Iowa 1977).

In this case, the court had neither a filed action before it nor a statutory duty to perform. However, a court may gain jurisdiction when a controversy is submitted to the court without a formal action. *See* Iowa Code ch. 678 (1989). Under chapter 678, submission of a controversy requires the filing of an affidavit by the party, a hearing, and a judgment. Iowa Code §§ 678.2–.3 (1989). This procedure grants the court jurisdiction to act, and filing these written documents provides a record that is available for public examination. *Id.* § 678.4.

Apparently, the parties requested the district court's aid without utilizing procedures that would have given the court jurisdiction to act. If this is true, the district court should have refused to act.

II. *Bad faith claim.* Following the entry of partial summary judgment upholding the appraisal award, Central's bad faith claim was submitted to and tried by a jury resulting in an award of damages. Aetna contends that the validity of the bad faith recovery is dependent upon the partial summary judgment. Consequently, it urges that reversal of the partial summary judgment ruling upholding the appraisal

award defeats Central's bad faith claim as a matter of law.

As pled in its petition, Central's theory of recovery on the bad faith claim was that Aetna wrongfully refused to compensate Central the amount of the umpire's appraisal award. The court instructed the jury that "the appraisal process and award is valid and that Central is entitled to be compensated for the fire loss based on the appraisal award." Under these instructions, the jury determined that Aetna acted unreasonably and in bad faith by denying Central the benefit of receiving a valid appraisal award.

Even though the reasonableness of Aetna's actions are at issue, the court's instructions tainted any consideration of Aetna's claim that it may have acted in good faith. Aetna originally rejected the appraisal award on the basis that the amount was excessive. We cannot approve a verdict from a jury that was misinformed on the validity of the appraisal award. The jury's award of damages consisted solely of attorney fees for collecting the appraisal award that we now set aside. Since the appraisal award is invalid, the bad faith jury verdict must be set aside.

Other reasons support setting aside the verdict. We believe that Aetna's motion for a directed verdict on this issue should have been sustained. In *Dolan v. Aid Insurance Co.*, 431 N.W.2d 790, 794 (Iowa 1988), we adopted the test designed in *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 691, 271 N.W.2d 368, 376 (1978), to be applied when an insured has a right of action against an insurer for first-party bad faith. This test states:

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.

*Dolan*, 431 N.W.2d at 794. We also determined that an insurer is entitled to debate a "fairly debatable" claim regardless of whether the debate concerns a matter of fact or law. *Id.*

In this case, when Aetna commenced this action on December 14, 1987, to set aside the appraisal award, it showed that two of its appraisals valued the loss under the policy to be $132,344 or $180,932. It tendered $180,932, the second and larger appraisal, to Central which was $341,301 less than the award. One of Aetna's original claims in this action was that the award was unconscionably excessive. This claim was subsequently unsuccessful. However, the fact that Aetna's claim did not succeed is not dispositive of the issue of Aetna's bad faith.

The issue becomes whether Aetna's act of partial payment of the appraisal award constituted evidence of bad faith. As Central claims in its brief, Aetna is judged by the evidence available at the time it repudiated the award. At that time Aetna had a right to fairly debate the issue of whether the appraisal award was grossly excessive. There is no showing that Aetna's second appraiser was tainted with partiality or lacked credibility. Aetna's action is consistent with our earlier holding that clear proof of a gross inadequacy in an arbitration award allows a presumption that the arbitrators were partisan. *Turner v. Hartford Fire Ins. Co.*, 185 Iowa 1363, 1372, 172 N.W. 166, 170 (1919). This presumption allows an award to be set aside because of the misfeasance of partiality. *Id.* Viewing the record as a whole, we believe that the issue of bad faith should have been decided in favor of Aetna as a matter of law.

We hold that the verdict for Central on its bad faith claim must be set aside. We direct the trial court to enter judgment for Aetna on the bad faith claim. Therefore, we need not discuss the issues concerning attorney fees as damages.

III. *Interest.* The issue of when interest should commence on the appraisal award is no longer viable due to the fact that we vacated the award. We conclude that it is inappropriate to address this issue because of the uncertainty surrounding its evolution following this appeal.

IV. *Summary.* We hold that Aetna's, rather than Central's, motion for partial

summary judgment should have been granted. Thus, we reverse the district court and remand for an order vacating the appraisal award and for further proceedings to determine the amount due Central under Aetna's policy. We also reverse the judgment entered on the bad faith action in ·favor of Central. We do not address the issue of interest.

REVERSED AND REMANDED.

All Justices concur except LARSON, LAVORATO, NEUMAN and SNELL, JJ., who take no part.