# IN THE SUPREME COURT OF IOWA

No. 19–1669

Submitted January 21, 2021—Filed May 14, 2021

**LUIGI'S, INC.,**

Appellee,

vs.

**UNITED FIRE AND CASUALTY COMPANY,**

Appellant.

Appeal from the Iowa District Court for Fayette County, John J. Bauercamper, Judge.

The defendant appeals from a jury verdict in favor of its insured following the district court's denial of its motion for directed verdict and motion for judgment notwithstanding the verdict. **REVERSED AND REMANDED.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Matthew G. Novak and Stephanie L. Hinz of Pickens, Barnes & Abernathy, Cedar Rapids, for appellant.

Peter C. Riley and Hugh G. Albrecht of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellee.

**McDERMOTT, Justice.**

I.

Luigi's restaurant in Oelwein, Iowa, has been in operation since the late 1950s. In November 2016, a fire broke out in the restaurant's kitchen that resulted in a total loss of the building and its contents. Luigi's insurance policy with United Fire and Casualty Company (United Fire) provided coverage for the building based on its "actual cash value" with a limit of insurance of $550,000. The policy provided two ways to determine the actual cash value:

> 1. In the event that there is a regular market for the property where the property can be bought and sold in the ordinary course of dealing, and it is possible to determine the property's market value, then the market value of the property is its Actual Cash Value.

> 2. In the event that there is no regular market for the property where the property can be bought and sold in the ordinary course of dealing, or it is not possible to determine the property's market value, then:

> Actual Case Value means the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.

The method described in the first subsection is sometimes referred to as a "market approach" and the method in the second as a "cost approach."

United Fire's adjuster, Dan Fasse, retained an independent real estate appraisal company, Rally Appraisal, to determine the building's actual cash value. Rally employee Jim Herink, a certified general real property appraiser, believed a market approach to be the appropriate method to determine the property's value. Herink (and an associate real estate appraiser who worked with him) inspected the Luigi's property and then searched for comparable sales of similar properties in similar markets. Citing to four restaurants in the area it believed were comparable

to Luigi's, Rally issued an appraisal report that concluded the actual cash value of the Luigi's building immediately prior to the fire was $242,000.

Fasse sent the appraisal report to Luigi's, along with a check for $234,500 (representing the $242,000 appraised value less the policy's deductible and advance payments). Luigi's owner orally rejected the valuation, telling Fasse that the comparable properties Herink used in his appraisal weren't comparable and that truly comparable properties didn't exist. Fasse followed up with a letter acknowledging that Luigi's rejected the valuation and informing Luigi's that it could contest the appraisal by hiring its own appraiser at its own cost or by invoking its appraisal process right set forth in the insurance policy.

Luigi's invoked its right to the appraisal process. The policy's appraisal process required Luigi's and United Fire each to select an appraiser. The appraisers, in turn, would select a neutral umpire. If the appraisers failed to agree on a valuation, they would submit their differences to the umpire. A decision agreed to by any two of the three would be binding on Luigi's and United Fire. The policy holds the parties responsible for their own fees or costs associated with the appraisal process.

For the appraisal process, United Fire continued with Herink as its appraiser. Luigi's retained Globe Midwest Adjustors International. Globe Midwest assigned its employee Charles Sorrell, an insurance appraiser, to the matter. Sorrell in turn retained an independent real estate appraiser (since Sorrell was not a real estate appraiser) named Keith Westercamp to assist him on the matter.

Sorrell in his appraisal used a cost approach (not a market approach as did Herink) and concluded the actual cash value of the Luigi's building immediately prior to the fire was $1,030,000. This figure included just

over $900,000 for the structure and $122,767.62 for "furniture, fixtures and equipment." Herink's appraisal (which valued the building at $242,000) didn't value and didn't address any other property or fixtures within the building.

On June 22, 2017, the umpire conducted the appraisal hearing with Sorrell and Westercamp (for Luigi's) and Herink (for United Fire). At its conclusion, all three signed an appraisal award letter establishing the loss amount at $502,000. This number consisted of a value for the building of $380,000 and a value for furniture, fixtures, and equipment of $122,000.

When he learned the result of the appraisal hearing, a displeased Fasse quizzed Herink about the basis for the numbers in the award. Fasse complained to Herink that the furniture, fixtures, and equipment were either duplicative of amounts already factored into the building valuation or already paid by United Fire under a separate provision of the policy covering business personal property. Fasse called Herink's supervisor at Rally to complain. Fasse advised Rally that Herink's mistake appeared to him a professional error, and Fasse thus requested Rally's errors and omission insurance policy information.

On June 23, with Fasse's approval, Herink sent a letter to the umpire complaining that the appraisal hearing exceeded its scope in determining loss amounts beyond the actual cash value of the real estate. Herink sought to withdraw his signature from the award letter that he'd signed the day before, contending that he felt "coerced" to sign the award, that "furniture, fixtures and equipment" were covered under the separate business personal property coverage in the policy (and that Sorrell "misled" him on this point), and that the personal property amount lacked a professional appraisal.

On June 27, the umpire called Sorrell and asked if Luigi's wished to consider reopening the appraisal hearing. The next day, Sorrell sent a short email declining any further action and stating that the appraisal award had been "agreed upon and signed" by all three participants at the hearing. In response, Rally's owner sent Sorrell a short email stating, "Thanks for the information, but we would like you to reconsider because this is likely heading towards a lawsuit." Two days later, Luigi's lawyer sent a letter to United Fire demanding immediate payment of the $502,000.

Meanwhile, under the policy, Luigi's still needed to provide United Fire with a sworn statement and proof of loss for its insurance claim. Luigi's provided them on June 29. These materials list (consistent with the appraisal hearing award) the loss amount at $502,000. Under the policy, having now received the sworn statement and proof of loss, United Fire had thirty days from the appraisal hearing—until July 22—to make its payment. On July 12, United Fire paid the $502,000 award in full.

Eight months later, Luigi's sued United Fire for breach of contract and bad faith, and included a request for punitive damages based on United Fire's failure to pay the $550,000 building coverage limit and for its actions after the appraisal hearing. During the jury trial in July 2019, United Fire moved for a directed verdict and for dismissal of all claims at the close of Luigi's case-in-chief and again after the submission of all the evidence. The district court denied the motions. United Fire also objected to several of the district court's instructions to the jury.

The jury returned a verdict in Luigi's favor on the breach of contract claim and awarded $48,000 in damages—the difference between the $550,000 building coverage limits and the $502,000 appraisal award. The jury also returned a verdict in Luigi's favor on its bad-faith claim and

awarded $40,989.25 in damages for the fees Luigi's incurred in the appraisal process to pay Globe Midwest and Sorrell, and $751.71 for Luigi's legal fees for the June 29 demand letter and related work. The jury also awarded Luigi's $30,000 in punitive damages. United Fire filed a posttrial motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The district court denied these motions as well.

## II.

On appeal, United Fire argues that Luigi's loss was completely resolved through the appraisal process and that the district court erred in denying the motion for directed verdict on the alleged delay in paying the claim. Stated differently, United Fire contends Luigi's invocation of the appraisal process, and United Fire's timely payment of the appraisal award, requires the court's dismissal of Luigi's claims as a matter of law, and that Luigi's failed to prove bad faith for any actions after the appraisal hearing.

We review the district court's ruling on a motion notwithstanding the verdict to correct legal error. Iowa R. App. P. 6.907. We consider the facts in a light most favorable to Luigi's as the nonmoving party. *Id.* r. 6.904(3)(*b*); *Royal Indem. Co. v. Factory Mut. Ins.*, 786 N.W.2d 839, 846 (Iowa 2010).

## A.

Luigi's argues that we shouldn't consider the substance of United Fire's appeal on the breach of contract issue because it failed to preserve error. A party ordinarily needs to raise and the district court needs to decide an issue before we address its merits on appeal. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Luigi's asserts that United Fire's argument to the district court centered on insufficiency of the evidence and didn't delve into the argument it presses in this appeal about the

conclusiveness of the appraisal process and United Fire's related timely payment of the appraisal award.

But Luigi's contention doesn't square with the district court transcript. United Fire argued repeatedly that "the construction of that policy is an issue for the Court as a matter of law" and that the district court could decide the issue based on the contract's requirements. "The obligation to pay came upon the proof of loss and the appraisal award, and the award was paid within the time frame set in the policy." United Fire raised the issue below, and the district court considered and denied it. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) (stating that an issue is preserved when the court's ruling indicates that the court considered the issue and necessarily ruled on it). Finding this issue preserved for appeal, we turn to the merits.

B.

At trial, Luigi's argued that United Fire breached the insurance policy and acted in bad faith by providing a lowball offer for the building coverage that, in turn, forced Luigi's to go through a time-consuming and expensive appraisal process. At the heart of Luigi's argument lies a claimed right to payment in full of the $550,000 building policy limits.

But the policy declarations page unambiguously describes the $550,000 as a "limit of insurance." The word "limit" denotes a maximum possible amount, not a guaranteed fixed amount. *Limit*, *Black's Law Dictionary* 1114 (11th ed. 2019) ("1. A restriction or restraint. 2. A boundary or defining line. 3. The extent of power, right, or authority."). What's more, the policy states the valuation would be determined based on the property's "actual cash value" immediately before the fire. It stated two alternative methods (the market approach and the cost approach) for how the actual cash value would be determined. If the policy really did

mandate a payout of $550,000 for a loss, there arguably would have been no need to specify any method—let alone two alternative methods—dictating how to determine the building's value. And if the parties disagreed on the value of the property, the policy provided for an appraisal process (the one Luigi's invoked) to resolve the dispute. There would be no need for an appraisal process if the building's value had been cemented at the $550,000 level. The policy itself dispatches Luigi's argument on this point.

Luigi's counters that, even if the policy language itself doesn't mandate the $550,000 payment, the doctrine of "reasonable expectations" compels that we impose such a requirement. The doctrine of reasonable expectations requires an insurer to provide coverage based on an insured's objectively reasonable expectations of what the insurance provides "even though painstaking study of the policy provisions would have negated those expectations." *Rodman v. State Farm Mut. Ins.*, 208 N.W.2d 903, 906 (Iowa 1973) (quoting Robert E. Keeton, *Basic Text on Insurance Law* § 6.3(a), at 351 (1971)). We will apply the doctrine where an exclusion is bizarre or oppressive, eviscerates terms the parties explicitly agreed to, or eliminates the dominant purpose for entering into the insurance contract. *Farm Bureau Mut. Ins. v. Sandbulte*, 302 N.W.2d 104, 112 (Iowa 1981) (en banc).

But an insured invoking the doctrine first needs to show that "[e]ither the policy must be such that an ordinary layperson would misunderstand its coverage, or there must be circumstances attributable to the insurer which would foster coverage expectations." *Clark-Peterson Co. v. Indep. Ins. Assocs.*, 492 N.W.2d 675, 677 (Iowa 1992) (en banc). The policy in this case refers to the $550,000 as a "limit of insurance." This information isn't buried in the depths of the policy, but stated on the

declarations page, and is language that an ordinary layperson could readily understand.

As to the other showing, Luigi's relies primarily on discussions and an email from United Fire's insurance agent as part of the policy renewal asking Luigi's to confirm whether "it's OK to lower the building value to $550,000." The communications more accurately should have referred to a "limit," and in written correspondence several weeks after this email, the agent correctly noted that changes to the policy included that the "[b]uilding limit is reduced to $550,000 and is on actual cash basis." Imprecision in these particular terms doesn't rise to a level that would foster a reasonable coverage expectation that Luigi's was automatically entitled to payment of the full $550,000 in the event of a loss. Under the circumstances, something far less than a "painstaking study of the policy provisions" would fix any misunderstanding that the policy expressed a guaranteed payment amount.

Luigi's continues that, even if the reasonable expectations doctrine doesn't apply, United Fire still breached the insurance contract by failing to retain "a competent, experienced appraiser" and to ensure the appraiser's valuation correctly established the building's actual cash value. Luigi's specifically contends that Fasse, had he critically analyzed Herink's appraisal and the comparable sales Herink relied on, simply could not have concluded a market approach would comply with the policy's valuation methodology considering the dearth of any suitable comparable sales. Luigi's argues that, with a market approach untenable, United Fire needed to employ the cost approach to value the building. Luigi's asserts that had United Fire not used the market approach, Luigi's would have received the full $550,000 based on the cost approach, and

wouldn't have needed to pay the $40,257.50 to Midwest Global and Sorrell for handling the appraisal process.

Herink, the independent expert United Fire retained on this claim, was a certified general real estate appraiser. He'd previously appraised forty to fifty restaurants and a half dozen fire losses. Herink steadfastly maintained the propriety of his appraising Luigi's real estate using a market approach. Sorrell himself agreed that Herink was qualified to determine whether there was a market value for the property. And even Westercamp, Luigi's own real estate appraiser (whom Sorrell retained to critique Herink's appraisal), told Sorrell there was a regular market value for the building. Fasse is himself an insurance adjustor, not a real estate appraiser, and retained Herink on United Fire's behalf for his expertise. Construing the facts in a light most favorable to Luigi's, Luigi's breach of contract claim based on United Fire's reliance on its expert still fails as a matter of law.

## C.

Luigi's also contends United Fire's reliance on Herink's appraisal constituted bad-faith denial of its insurance claim. Bad-faith denial has two elements: (1) absence of a reasonable basis for denying the claim (an objective standard), and (2) the insurer knew or had reason to know its denial was without a reasonable basis (a subjective standard). *Bellville v. Farm Bureau Mut. Ins.*, 702 N.W.2d 468, 473 (Iowa 2005); *Galbraith v. Allied Mut. Ins.*, 698 N.W.2d 325, 328 (Iowa 2005).

But to establish bad faith Luigi's must do more than show the investigation wasn't as "thorough or all-encompassing" as Luigi's would have liked. *Seastrom v. Farm Bureau Life Ins.*, 601 N.W.2d 339, 347 (Iowa 1999). Again, United Fire had no obligation "to disregard the opinion of its own expert in favor of the insured's expert's opinion." *Morgan v. Am.*

*Fam. Mut. Ins.*, 534 N.W.2d 92, 97 (Iowa 1995). For the reasons elaborated above, we thus hold this claim similarly fails as a matter of law. *See Reuter v. State Farm Mut. Auto. Ins.*, 469 N.W.2d 250, 254 (Iowa 1991) (affirming directed verdict in favor of an insurer on an insured's bad-faith claim where the insurer reasonably sought an independent professional evaluation of the claim and relied on the professional's opinions).

Luigi's also argues that United Fire acted in bad faith by attempting to back out of the appraisal award after the hearing through Herink's letter to the umpire seeking to rescind his signature and Rally's email to Sorrell stating that the matter was "likely heading towards a lawsuit." Insureds may pursue a cause of action against an insurer for bad-faith denial or (as relevant to this claim) *delay* of insurance benefits. *Dolan v. Aid Ins.*, 431 N.W.2d 790, 794 (Iowa 1988) (en banc). The jury awarded Luigi's $751.71 in attorney fees it incurred to draft a letter demanding United Fire pay the appraisal award as it had agreed. But Luigi's possesses no bad-faith delay claim concerning the payment because the parties agreed in the insurance contract that United Fire would have thirty days after the appraisal hearing and submission of the sworn statement and proof of loss to make payment. United Fire had until July 22; it paid in full on July 12.

Luigi's argues Herink's letter to the umpire and Rally's email to Sorrell separately provide Luigi's a cause of action for bad faith. United Fire, for its part, didn't actually send either communication, but more accurately allowed them to be sent. Regardless, an appraisal award is not a judgment and the court possesses the power to set it aside. *Cent. Life Ins. v. Aetna Cas. & Sur. Co.*, 466 N.W.2d 257, 260 (Iowa 1991) (en banc). To set aside an award, the complaining party must prove fraud, mistake, or misfeasance on the part of an appraiser or umpire. *Walnut Creek Townhome Ass'n v. Depositors Ins.*, 913 N.W.2d 80, 89 (Iowa 2018).

For Luigi's to establish its claim of bad faith, it has to negate "any reasonable basis" for United Fire's denial or delay. *Bellville*, 702 N.W.2d at 481. United Fire would have a reasonable basis if the claim is "fairly debatable" as to either an issue of fact or law. *Rodda v. Vermeer Mfg.*, 734 N.W.2d 480, 483 (Iowa 2007). A claim is "fairly debatable" if it's "open to dispute on any logical basis." *Id.* This determination may be made by the court as a matter of law. *Id.*

The record makes clear there was a legitimate debate about the scope of the appraisal process. Not long after Luigi's invoked its appraisal process right, Fasse emailed Sorrell asking, "Is an appraisal being sought for only the building coverage or are all coverages being disputed at this time?" Fasse then stated that he hadn't received information to support any other coverages, naming particularly "the business personal property [(BPP)], the business income [(BI)] or extra expenses matters." Sorrell sent a response email stating, "It is my understanding that appraisal is being sought for all coverages involved with the claim." But then Sorrell continued:

> That being said, I can understand your point regarding the BPP, BI, and Extra Expense portions of the claim. I will review with the Insured the need for those claims being submitted. If a dispute still exists at that time, then they will have the option to demand appraisal on those differences, should some exist.

Despite Fasse's direct question, the resulting correspondence left the issue unresolved.

The insurance policy provided separate coverages for "Building" and "Business Personal Property." The building coverage refers to "the building or structure." Business personal property means "property located in or on," or "within 100 feet of the building or structure." For certain types of property, the policy includes some overlap in what's included under these

separate coverages. For instance, both the building coverage and the business personal property coverage include fixtures, machinery, and equipment. Yet appliances are listed only under the building provision; furniture is listed only under business personal property.

Known to Fasse, but unbeknownst to Herink, United Fire had already paid Luigi's business personal property claim by the time of the appraisal hearing. United Fire thus sent only Herink—a real estate appraiser but not a property appraiser—to the hearing. Herink had appraised the building, but he apparently came armed without information to discuss the valuation of any furniture, fixtures, or equipment. Herink's written response to Sorrell's appraisal report (provided to the umpire before the appraisal hearing) likewise included no mention of furniture, fixtures, or equipment. Even when viewed in a light most favorable to Luigi's, the record establishes that the issue of whether the appraisal hearing would (or should) include consideration of furniture, fixtures, and equipment was "open to dispute" and thus fairly debatable. *Rodda*, 734 N.W.2d at 483.

United Fire thus had a reasonable basis for allowing Herink and Rally to send the posthearing letter and email. While appraisal awards have a strong presumption of validity, courts nonetheless possess the power to set them aside in situations involving fraud or malfeasance. *See Cent. Life Ins.*, 466 N.W.2d at 260. Parties are under no prohibition to remain silent when a colorable basis for challenging them might arise. Luigi's failed to meet its burden to negate any reasonable basis for Herink's and Rally's postaward correspondence. Under these circumstances, Luigi's possesses no claim for bad faith as a matter of law, and the district court erred in denying United Fire's motion for directed verdict.

14

D.

Having reversed the district court's denial of the motion for directed verdict on Luigi's breach of contract and bad-faith causes of action, we likewise dismiss the related punitive damages claim necessarily associated with them. *Magnusson Agency v. Pub. Entity Nat'l Co.-Midwest*, 560 N.W.2d 20, 29 (Iowa 1997).

III.

For the foregoing reasons, we reverse the judgment of the district court and remand for dismissal.

**REVERSED AND REMANDED.**